ALEXANDER D. MARRIOTT, APPELLEE, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

FILED MAY 7, 1909.   No. 15,596.

1. Telegraphs: FAILURE TO DELIVER: ACTION: EVIDENCE. Where the plaintiff had decided to consign a shipment of cattle to Chicago upon the receipt of a telegram regarding that market, which telegram the defendant negligently failed to deliver, he may, in an action against the defendant for such negligence, be permitted to testify that the effect upon his mind of the failure to receive the telegram was to cause him to divert a part of such shipment to another market.

2. ———: ———: NOTICE. Knowledge of the probable result of a failure to deliver a telegraph message may be imparted to the telegraph company as well by circumstances as by formal or explicit notice or by the language of the message itself.

3. ———: ———: DAMAGES. Where the failure of the defendant to deliver a message caused the plaintiff to divert ᵃa shipment of stock to an unfavorable market, the measure of damages in an action against the defendant for such ᵛfailure is the difference between the net sum the plaintiff received in such unfavorable market and what he would‛have realized in the market to which he would have shipped the stock except for defendant's said failure.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*George H. Fearons* and *Francis A. Brogan,* for appellant.

*T. W. Blackburn, contra.*

CALKINS, C.

The plaintiff was a stockman having a ranch about 100 miles distant from Evarts, a station on the Chicago, Milwaukee & St. Paul Railroad in South Dakota. He had about 450 head of cattle, enough to load 21 cars, which he desired to ship to Chicago or Sioux City, the two markets which were most readily accessible from Evarts. After starting the cattle from his ranch on the drive to Evarts, he on Saturday, September 3, 1904, delivered to the defendant at Evarts a message to the Globe Commission Company of Chicago, of which one Horn was the representative, as follows: "Evarts, So. Dak. 9-3-1904. To Globe Com. Co. Yards: Will load Monday. Wire before noon Monday prospects for Wednesday. ˋ (Signed) A. D. Marriott." This was duly delivered, and on Monday, in response to the request therein contained, Mr. Horn delivered to the defendant at Chicago theˊ following message: "Chicago, Ill., Sept. 5, 1904. A. D. Marriott, Evarts, So. Dak. 2500 ᵂwesterns 10 to 20 higher; show

Humphrey. (Signed) J. S. Horn." This message the defendant negligently failed to deliver. Prior to 6 o'clock P. M. of that day the plaintiff had billed or directed the billing of all his cattle to Chicago; but not receiving the telegram sent by Mr. Horn, though called for by him at the defendant's office, he, for the reason, as he claims, that he supposed the market at Chicago had not improved, changed the billing of his cattle so as to consign six cars, containing 125 head, to Sioux City. The result was that he realized $473.23 less for the cattle than he would have obtained had the same been shipped to Chicago. There was a trial to a jury, who found for the plaintiff in the above amount, and from a judgment upon this verdict the defendant appeals.

1. The defendant argues that, before the damages claimed can be regarded as arising naturally from defendant's breach of the contract, we must ascertain what effect the receipt of this telegram would have had upon the plaintiff's mind, and that this fact is not susceptible of proof and cannot be the subject of investigation in a legal proceeding. It does not follow that, because a fact cannot be established by direct proof, the same cannot be the subject of a legal investigation; but that point it is unnecessary to discuss, as the question presented here is one of the application of the law of evidence. It is said that, while Mr. Marriott may now testify what he would have done, he cannot possibly know what the effect would have been. We think the question must be determined by the test whether the witness is testifying to a state of mind which actually existed, or what would have been the state of his mind under certain conditions. If the former, it is admissible; if the latter, it is the expression of an opinion, and irrelevant under a familiar rule of the law of evidence. Upon consideration we are convinced that the evidence relates to a state of mind which actually existed. The plaintiff had determined to ship the cattle to Chicago if he received advices showing favorable conditions existing in that market. The fail-

ure to receive any telegram caused him to divert six cars to Sioux City, which was the nearest market for such cattle. In testifying to this he was not giving an opinion as to what effect the receipt of the telegram would have produced, but what effect the failure to receive the telegram did actually produce, and we therefore conclude that the real question necessary to be determined is the effect actually produced by defendant's breach, which is capable of proof and may be the subject of legal investigation.

2. It is claimed that the diversion of part of plaintiff's shipment to Sioux City was not a result which might reasonably be supposed to have been contemplated by the parties as one of the consequences of defendant's breach of its contract to deliver the message; in other words, that, supposing the defendant actually took thought of the consequences of its neglect, it could not reasonably be expected to consider a diversion of the shipment as one of the natural results. This assumes an ignorance on the part of the defendant of the ordinary method of conducting the plaintiff's business, and the purpose for which business men make use of telegraph facilities, which is inconceivable. The defendant had forwarded the message on Saturday addressed to a commission company at the Chicago stock-yards, asking them to wire before Monday noon the prospects for Wednesday. The defendant received and transmitted this message and took from the party to whom it was addressed a reply thereto, the contents of which plainly indicated that it was intended to convey to the plaintiff information of the condition of the cattle market. We think these facts unexplained were sufficient to submit to the jury, which was the judge of the questions of fact, whether the defendant should or should not have anticipated this result as a consequence of its negligence. *Smith v. Western Union Telegraph Co.,* 80 Neb. 395.

3. The rule for the measure of damages announced in *Hadley v. Baxendale,* 9 Exch. Rep. (Eng.) *341, generally

adopted in this country, is expressed in the following language: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either as arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the .probable result of the breach of it." We have therefore to inquire whether the defendant may reasonably be supposed to have contemplated that the diversion of such shipment might result, as it did, in a financial loss to the plaintiff on account of the less favorable conditions existing in the Sioux City market. As is pointed out in the brief of the defendant, the different markets have a tendency to approximate each other; but they vary from the normal and from each other at particular times and on account of local conditions that affect one market and do not obtain in another. The problem presented to the shipper when he is determining to which of several markets he will consign his stock is to select a market where the most favorable conditions will probably exist for the seller at the time of the arrival of his stock. This can never be done absolutely, but it is one of the conditions which the shipper undertakes to forecast from a knowledge of present conditions, and to ascertain those present conditions he uses the facilities offered by the telegraph. If the defendant company fails to transmit, according to its contract, information concerning the existing conditions, and the shipper, for want of such information, makes the mistake of shipping his stock to the market where the less favorable conditions prevail, the loss which he thus sustains arises naturally from his selection of the unfavorable market, and is one which would have been in the contemplation of any person who had considered what the consequences of selecting the unfavorable market would be. The loss that

he so suffered was the identical one which he was seeking to avoid in selecting his point of shipment, and, if the defendant considered what damage the plaintiff would suffer if he was led to select the wrong market by its failure to fulfil its contract, the difference ' between the prices in the favorable and the unfavorable market would have been the first and only consequence of importance which would have naturally suggested itself to the defendant. We therefore conclude that the case falls within the rule laid down in *Hadley v. Baxendale, supra,* and that the court did not err in submitting the case to the jury.

We recommend that the judgment of the district court be affirmed.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.