WESTERN UNION TELEGRAPH COMPANY *v.* GRIFFIN.

SAME *v.* GORDON.

(Two Cases).

Opinion delivered November 8, 1909.

1.   TELEGRAPH COMPANIES—SPECIAL DAMAGE—SUFFICIENCY OF NOTICE.—A
message to one from his son-in-law, announcing the death of the
former's daughter and requesting him to come at once and to send an
answer, sufficiently indicates that the daughter's funeral was being
held in abeyance until the expiration of a reasonable time. (Page 226.)

2.   SAME—WHEN DAMAGE FOR MENTAL ANGUISH RECOVERABLE.—The sender
of a message addressed to his father-in-law, announcing the death of
his wife and requesting him to come at once and to answer the mes-
sage, may recover damages for mental anguish caused by the failure
of the telegraph company to deliver the message within a reasonable
time.   (Page 228.)

3.   SAME—DAMAGES FOR MENTAL ANGUISH—PARTIES.—Where a telegraphic
message was sent from this State, where damages for mental anguish
are recoverable, to be delivered in another State, where such damages

are not recoverable, and the telegraph company duly transmitted the message, but negligently failed to deliver it to the addressee, either the sender or the addressee may, in an action in this State, recover such damages for mental anguish as they may establish. (Page 229.)

4. SAME—MENTAL DAMAGES—BASIS OF RECOVERY.—As the statute (Kirby's Digest, § 7947) makes mental anguish an element of recoverable damage for failure to receive, transmit or deliver a telegram, a recovery may be had *ex contractu* in this State for negligent failure to deliver a message, even though the negligence occurred in a State where mental anguish is not an element of recoverable damages. (Page 230.)

Appeal from Faulkner Circuit Court; *Eugene Lankford,* Judge; affirmed.

*George H. Fearons,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Appellant is not chargeable with negligence. The message was not received at Water Valley until seven minutes after four in the afternoon. Sunday office hours were from eight to ten A. M. and from four to six P. M. The operator's testimony that she used diligence to find a special messenger is uncontradicted and stands as proved. 75 Ark. 406.

2. The proof shows that after the message was mailed, which was the next quickest means of delivering it, Gordon would not have received it until Tuesday morning. Deceased was buried Monday afternoon. If there was any error or delay in the message, it was not the proximate cause of the failure to attend the funeral, and there can be no recovery. 27 Am. & Eng. Enc. of L., 1075-6. The remains had been embalmed, and could have been held for two weeks. Griffin had endeavored to communicate with Gordon by other means. He learned on the next morning that a friend had sent word to Gordon at Banner, but proceeded to have the funeral that afternoon, Monday. He should have postponed the funeral a reasonable time after learning of his friend's effort. Having made no effort to minimize the damage, he should not be heard to complain. 90 Ark. 203; Sedgwick on Dam., § § 204, 214; 27 Am. & Eng. Enc. of L. 1033e; 84 Ark. 506.

3. Appellant was not notified that the funeral arrangements were in abeyance until word should be received from Gordon. 78 Ark. 545; 79 Ark. 33; Sedgwick on Dam.; § § 879, 880; 84 Ark. 461; 27 S. W. 144; *Id.* 52; 26 S. W. 490.

4. If there was any negligence, it occurred in the State of Mississippi, where the mental anguish statute does not apply. 68 Miss. 748; 47 So. 552. The action of an addressee for failure to deliver a telegram is in tort, not in contract. 77 Ark. 536; Thompson on Electricity, § 427; 79 Ark. 452; 84 Ark. 327; 85 Ark. 268. The negligence of the operator at Water Valley, if any, constituted a tort, and Mississippi law applies. In South Carolina, from whose statute ours is taken verbatim, it is held that the law of the place of the negligence governs. 60 S. E. 435; 52 S. E. 107. See also 66 Ark. 466.

5. Griffin cannot recover for mental anguish because his father-in-law was not present at the funeral to console him. It is too remote and speculative. 83 Ark. 476; 79 Tex. 649; 24 Tex. Civ. App. 84; 57 S. E. 757; 60 S. E. 660; Id. 662; Id. 663; 54 S. W. 829; Id. 830; 31 So. 78; 30 S. W. 896; Id. 298; 39 S. W. 198.

R. W. Robins, for appellees.

1. Due diligence is not shown. The message on its face gave notice of its urgency, not to·mention the fact that the agent at Conway was given full notice of the necessity for prompt delivery and had agreed to have it delivered by special messenger. Water Valley is shown to be a city of from 3,500 to 4,000 inhabitants. There is no claim that there was no livery stable or other establishment in the city from which a messenger could be sent, nor that any attempt was made to hire such a messenger. And the message was mailed within an hour of the time it was received by the operator.

2. This haste in placing the message in the mail for delivery without making sufficient effort to forward it by special messenger was negligence, and was the proximate cause of Gordon's failure to receive the message in time to attend the funeral.

3. The message was sufficient on its face, aside from information given to the operator, to put the appellant on notice that the funeral arrangements would await an answer from Gordon. Damages are recoverable under such circumstances, even though a.reply message is necessary to procure a postponement of the funeral. 78 S. W. 491; 54 S. W. 414; Joyce on Electric Law, § 811; 87 Ark. 303, 307; 88 Ark. 499, 504.

4. Appellant's answer does not plead the Mississippi law as a defense, so as to put appellees on notice and give them an opportunity to show where the negligence occurred. The plea is not now available, in the absence of an amendment of its pleadings. But if the plea were properly before this court, appellants are under the law entitled to recover. 77 Ark. 531, 535. It was not the intention of our Legislature to confine the right of recovery to negligent acts of the telegraph company in this or some other State where the mental anguish doctrine prevails; nor has our court ever so construed the statute. See Arkansas cases cited by appellant. 69 S. W. 427; 74 S. W. 752; 49 S. E. 952; 45 S. E. 938; 135 Mo. 661; 56 L. R. A. 486; Thompson, Law of Electricity, § 165, p. 190; 95 Ind. 12; Jones, Tel. & Tel. Companies, § 598.

5. The true doctrine is that where consanguinity does not exist between the parties mental anguish because of the absence of one of them will not be *presumed;* "but if mental anguish does actually result from the failure to deliver a message, where there is only affinity between the parties, it may be shown and damages recovered." 132 N. C., 317, 322; 85 Ark. 263; 83 Ark. 39; 87 Ark. 303.

BATTLE, J. On Sunday, March 24, 1907, Mrs. Genie Griffin, wife of Ben L. Griffin, died, and the following telegram was delivered to the Western Union Telegraph Company at Conway, Arkansas, on that day, about one o'clock, P. M. to be sent to A. A. Gordon, at Banner, Mississippi:

"A. A. Gordon, Banner, Miss., *via* Water Valley, Miss.

"Genie died very suddenly at one P. M. today. Come at once. Answer, my expense.

"Ben L. Griffin."

The funeral of Mrs. Griffin took place at Conway, on the 25th of March, 1907, at about five o'clock P. M. A. A. Gordon was not present, the telegram not having been delivered to him until three or four days thereafter.

Ben L. Griffin and A. A Gordon brought separate actions against the Telegraph Company to recover the damages occasioned by the failure to deliver the message in time.

Ben L. Griffin alleged in his complaint, substantially, as follows: "The defendant is a corporation, engaged in transmitting

telegrams, and on March 24, at one o'clock P. M. plaintiff delivered to it the following telegram: 'A. A. Gordon, Banner, Miss., *via* Water Valley, Miss.: Genie died very suddenly at one P. M. today. Come at once. Answer, my expense. Ben L. Griffin.'

"That at the time the message was delivered to defendant it was notified that A. A. Gordon was the father of 'Genie,' and that plaintiff was very anxious for prompt delivery of the message, so that the addressee could come at once, and be present at the funeral, which was to occur at Conway. That the addressee was then at Banner, and plaintiff desired him to be present at the funeral. That the price for transmitting the message was paid and charges for its prompt delivery guarantied. That defendant agreed to transmit the message and deliver it promptly to the addressee; that defendant wantonly, wilfully and negligently failed to deliver the message promptly, or within a reasonable time, and that the message was not delivered until March 29; that, on account of the failure to deliver the message, the addressee did not attend the funeral and was not with the plaintiff before and at the time of the funeral," which was the occasion to him of great mental anguish, and caused him to suffer damages in the sum of $1,500.

The defendant answered and denied the material allegations in the complaint.

A. A. Gordon alleged in his complaint, substantially, that the telegram was sent in the manner alleged in Griffin's complaint, "and that it was not delivered to plaintiff within a reasonable time, because of the negligence of the defendant, and that it was not received by plaintiff until March 29; that, had he received the message promptly or within a reasonable time, he could and would have gone to Conway and have been present at the funeral, and that solely because of the failure to deliver the message promptly he was not present at the funeral; that his failure to attend the funeral occasioned him mental anguish and damaged him in the sum of $1,500."

The defendant denied material allegations.

By consent the two actions were heard as one, and the jury returned a verdict in favor of each of the plaintiffs for $200, and judgment was rendered accordingly; and the defendant appealed.

In the trial of the issues in the case evidence was adduced tending to prove the following facts:

On the 24th of March, about twelve o'clock, Mrs. Genie Griffin died at her home in Conway, Arkansas. She was the wife of Ben L. Griffin and the daughter of A. A. Gordon. About one o'clock P. M. of the same day, Griffin delivered to the defendant, at Conway, a telegram in words and figures set out above, to be sent to A. A. Gordon, at Banner, Mississippi. J. R. Pearcy delivered the telegram for him, and told the defendant's operator, at the time he delivered it, that "Genie" mentioned in the message was the wife of Griffin and the daughter of Gordon; explained to the operator about the funeral, and told him that a reply to the message was desired at once, so that Griffin might know whether or not to expect Gordon to come to the funeral, and told him where Gordon resided, which was about eighteen miles from the defendant's telegraph office at Water Valley, Miss., and that it would be necessary to send the telegram to him from Water Valley by special messenger, and offered and agreed to pay all charges for sending the message and extra charges for sending it from Water Valley to Gordon, and defendant agreed to transmit the message and send it to Gordon by special messenger.

The body of Mrs. Griffin was embalmed, so as to preserve it for a week or two, and the time of the funeral was postponed, awaiting a reply to the message. The telegram was sent and reached Water Valley on the 24th of March, 1907, at 4:07 P. M. The operator at that place testified: "After making inquiries from several parties, none of whom knew Mr. Gordon, I asked several parties to deliver said message, without success. I then placed a copy of the message in postoffice at about five o'clock, Sunday afternoon, directing it to Banner, Mississippi, Banner being twenty miles from this place (Water Valley), and there being no telephone communication there, this being the quickest way to get it to destination." Water Valley is a town of about 3,500 or 4,000 inhabitants, and the distance between it and Gordon's residence could have been traveled by horse in three hours. Gordon was at home on Sunday and Sunday night, which was the 24th of March, 1907, and remained there until 5 o'clock A. M. of the day following. If he had received the telegram on or be-

fore 10 o'clock P. M. on Sunday, he could have reached Conway at 6 or 10 P. M. of the next day. If Gordon had received the telegram on or before 10 o'clock Sunday night, he could and would have sent telegram to Griffin that he would come, and that he could and would have come to Conway at once; and that if such a message had been received by Griffin, he could have and would have postponed the funeral of his wife until Gordon arrived.

After many ineffectual efforts to hear from his message, Griffin heard, on the morning after it had been delivered to the defendant for transmission, at eleven o'clock, that it had been received at Water Valley, and had been placed in the postoffice at Water Valley addressed to Gordon at Banner, to be sent to him by mail. It was then uncertain when it would reach him, and in fact did not until the 29th of March, 1907. When he heard the message had been sent to Gordon by mail, he caused his wife to be buried on Monday evening, March 25, at about five o'clock, and Gordon was not present. While he was waiting to hear from his telegram, he was anxious and much worried.

The court instructed the jury, in part, at the request of the defendant, as follows: "You are instructed that the defendant was not compelled to attempt to deliver said telegram otherwise than by sending it to Water Valley and from there attempting to deliver it to the addressee; and if you find from the evidence that the defendant transmitted said message to Water Valley with reasonable dispatch and made the efforts of a reasonably prudent person under the circumstances to send it by special messenger from Water Valley to Banner, Miss., but was unable to secure such special messenger, your verdict will be for the defendant."

And refused to instruct as follows:

"You are instructed that the telegram in suit was transmitted to Water Valley, Miss., with reasonable dispatch, and that defendant committed no act of negligence in the transmission of said message that would have occasioned plaintiff any damages unless in the delay in delivery of the message from Water Valley to Banner, Miss.; but, even if you find that defendant was guilty of negligence in not delivering said message from Water Valley to Banner, in the State of Mississippi, sooner than it did, you are

instructed that its tort was committed in the State of Mississippi, and the law of Mississippi will govern as to plaintiff's right of recovery for mental anguish; and you are further instructed that the law of Mississippi does not allow a recovery for mental anguish in such cases, and your verdict will be for the defendant, as to the plaintiff, A. A. Gordon."

Many instructions were given and refused.

The evidence adduced in the trial court tended to prove that the telegram delivered to appellant to be sent to Gordon reached Water Valley at seven minutes after four o'clock P. M. on the day it was sent. Appellant agreed to deliver it to Gordon, who resided near Banner, in Mississippi, eighteen or twenty miles from Water Valley, and Griffin, who sent the message, agreed to pay the expenses of sending it from the latter place to him. To do so it was necessary to send it by special messenger. The operator at Water Valley testified that she asked several parties to deliver the message, without success. Was that sufficient? Water Valley is a town of 3,500 or 4,000 inhabitants, and it was not shown that a horse and rider or conveyance could not have been hired in that place to carry the message to Gordon. The question as to whether reasonable efforts were made to secure such a conveyance was submitted to a jury, and they found in the negative, and the evidence sustains them.

If appellant had sent the message to Gordon by special messenger, as it agreed to do, the evidence tends to prove that the funeral would have been postponed, and Gordon would have been present, and in this respect sustains the verdict of the jury.

Appellant says it had no notice that the funeral of Mrs. Griffin was in abeyance. The evidence shows that it did have. The message was sufficient to put it on notice that it would be postponed until the expiration of a reasonable time. The message to Gordon was to "Come at once. Answer at my expense." It expressed a desire for him to come and a request for an answer. The answer was, evidently, for the purpose of ascertaining whether he would come, and, if so, when, so that the funeral could be postponed to a time when he could be present. All this indicated that the funeral was in abeyance at the time the message was delivered.

Appellant says that the relation of son-in-law by Griffin to Gordon was not sufficient to sustain an action for mental anguish

occasioned by the failure to deliver a telegram. But it was held to the contrary in *Western Union Tel. Co.* v. *Moxley,* 80 Ark. 554. Two opinions were delivered in that case, and it was held as stated in the first opinion, and this much of the first opinion was not retracted or modified by the second.

It is contended that, if there was any negligence in failing to deliver the message in question, it occurred in the State of Mississippi, where damages on account of mental anguish without personal injury are not recoverable and appellees cannot recover in their actions. This view is not sustained by *Western Union Telegraph Co.* v. *Woodard,* 84 Ark. 323. In that case a message was sent from Fayetteville, Tennessee, to Stuttgart, Arkansas, notifying the addressee of the death of his sister. The message never reached this State. After quoting from Wharton on the Conflict of Laws, the court said: "Applying this principle here, it is not material in this case which view is generally taken as to the action, whether *ex delicto, ex contractu* or statutory; for the actions must be sustained by reason of the Tennessee contract. It is held in Tennessee that the addressee recovers upon the contract of the sender inuring to his benefit, and that mental anguish is a recoverable element in such contracts.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"In this case, although there may be no statutory action arising in Arkansas, for the reason that no negligence has occurred actionable under the statute, yet there is a contract which, under the laws of Tennessee where it was made between the sender and the Telegraph Company, inured to the benefit of the addressee; and one element of the contract was the right to recover for mental anguish. That action is, under the principles heretofore quoted from Wharton (which seem fully supported by the authorities), sustainable here; and that is as far as the court is required to go in this case."

According to that case these actions are sustained by the contracts sued on, it having been made, like the Tennesse contract, under a statute which allows the recovery of damages for mental anguish.

Judgment affirmed.

FRAUENTHAL, J., disqualified and not participating.

ON REHEARING.

Opinion delivered November 20, 1909.

McCULLOCH, C. J. It is insisted that the conclusion reached in the present case is in conflict with the decision in *Western Union Tel. Co.* v. *Ford,* 77 Ark. 531. In that case a telegram was sent from Missouri, where damages on account of mental anguish are not recoverable, into Arkansas, and the negligence occurred here. Suit was brought by the addressee, and we held that damages for mental anguish could be recovered, although not recoverable in the State whence the message came. The opinion in that case contains inaccurate language, which is in conflict with other decisions of this court. We said that the right to recover such damages did not depend on any contractual relation existing between the Telegraph Company and the person injured, and that no contract existed between the addressee of the message and the company. Now, the addressee is one for whose benefit the contract is made. Therefore, a contractual relation with him is established. We have in other cases recognized the principle that the cause of action to recover damages on account of mental anguish arises out of the contract, although the element of damages is created by statute.

In *Arkansas & La. Ry. Co.* v. *Stroude,* 77 Ark. 109, we said of this statute that "manifestly, it was the intention of the lawmakers to change by statute the law as declared by this court in the case referred to above, and to make mental pain and anguish an element of damages resulting from a negligent failure to receive, transmit or deliver a telegraphic message."

In other cases we have held that the contract governs to the extent that a stipulation therein, requiring notice of a claim for damages, is enforceable, and that no recovery can be had unless notice be given in accordance with the terms of the contract. *Western Union Tel. Co.* v. *Moxley,* 80 Ark. 554; *Western Union Tel. Co.* v. *Nelson,* 86 Ark. 336.

In *Western Union Tel. Co.* v. *Raines,* 78 Ark. 545, and in *Western Union Tel. Co.* v. *Hogue,* 79 Ark. 33, we recognized the force of the contractual rights of the parties by holding that the rule in *Hadley* v. *Baxendale,* 9 Exch. 341, would control so as to exclude a recovery of damages when

notice was not given that the same might accrue, Judge RIDDICK, speaking for the court in the Hogue case, said: "Such damages may, under our statute, be recovered in some cases, but the statute does not change the rule that when a plaintiff seeks to recover of a defendant special damages on account of the breach of a contract he must show that at the time the defendant entered into the contract he had notice of the special circumstances out of which the special damages arose, so that it may be reasonably said, as a matter of law, that such special damages were in contemplation of the parties at the time they made the contract." He then quoted the following from the American & English Encyclopedia of Law (vol. 27, p. 1059): "While actions against telegraph companies are not necessarily or usually *ex contractu,* but *ex delicto* for a breach of a public duty, the cause of action is so far dependent upon the original contract of sending as to make the rule just stated controlling, and it has been universally applied in this class of actions, without regard to whether the particular action is *ex contractu* or *ex delicto.*"

In the Raines case Judge BATTLE, speaking for the court, said: "The damages recoverable under the statute are such as the jury may conclude resulted from the negligence of the telegraph company. Such damages are allowed as a compensation for the mental anguish or suffering; and the liability of the company for the same depends upon its having had notice, before or at the time of receiving the telegram, of the special circumstances on account of which mental suffering was caused by negligence in transmitting or delivering the message. This notice may be given by or through the telegram itself or otherwise."

We think the decisions in all these cases are reconcilable with the decision in the Ford case, though some of the language used in the Ford case is, as already stated, inaccurate. The Ford case is also reconcilable with the conclusion reached in the present case. Mr. Wharton, in his work on Conflict of Laws, states the principles upon which a recovery can, without conflict of principles, be had in each of these cases. (Wharton on Conflict of Laws, 3d Ed. § 471f.) He states that "the general rule seems to be that a contract made in one State or country for the transmission of a telegram from a point in that State or country

to a point in another is governed by the law of the State or country in which the contract is made and from which the telegram is sent, rather than by that of the State in which it is received," but that some cases "assume that the performance of the contract is the delivery of the telegram, and that the transmission is merely a means of enabling the telegraph company to perform; and they therefore refer the contract to the law of the place of delivery as the sole place of performance." He then proceeds: "Assuming, however, that the former rule is the correct one, it does not apply to matters that relate to the remedy, as distinguished from the substantive contract, and therefore does not operate to relieve a contract from the effect of a statute, which is remedial rather than substantive, of the State in which the telegram was to be delivered, if the action is brought in that State."

This fully sustains, without conflict, the decision in the Ford case and in the present case. The statute makes mental anguish an element of recoverable damage for failure to receive, transmit or deliver a telegram; yet the relation out of which the duty arises is created by contract, and the cause of action primarily grows out of the contract. For this reason a recovery may be had here for negligent failure to deliver a message, even though the negligence occurred in a State where mental anguish is not an element of recoverable damages. On the other hand, as in the Ford case, a recovery may be had for a negligent failure here to deliver a message sent from another State where such element of damage is not recognized. When the negligence occurs here, the statute of this State applies, and makes mental anguish an element of damages, regardless of the law of the State whence the message came, for the statute is intended to give redress for negligent failure to perform the contract to deliver a message.

The peition for rehearing is therefore denied.

