## L. A. LA MASTER ET AL. V. KATIE E. DICKSON ET AL.

Delivered December 18, 1897.

**1. Ex Parte Deposition—Admission—Harmless Error.**

A party can not complain on appeal of the admission of an ex parte deposition, where before the trial was concluded he put the witness on the stand and proved by him that what he stated in the deposition was true.

**2. Evidence—Deed—Admission—Harmless Error.**

Defendant in an action commenced by husband and wife to recover land belonging to the latter is not prejudiced by the introduction of a quitclaim deed from the husband to his children after the wife had died and the children had been allowed to prosecute the suit by their next friend.

**3. Same—Declarations of Husband—Property of Wife.**

Declarations of the husband of a donee under a parol gift of land, made in her absence and after her rights had fully accrued, are inadmissible as against her or those claiming under her, where no predicate has been laid to impeach him as a witness in support of her title.

**4. Action for Land—Conveyance of Part—Effect.**

The right of a husband and wife to maintain an action to recover land belonging to the latter is not affected by the execution by them of a quitclaim deed of an undivided interest in the land to her attorneys before suit, in consideration of services to be rendered in recovering the land, since at most the attorneys are only tenants in common.

**5. Statute of Frauds—Parol Gift—Value of Improvements.**

That the improvements placed upon land by the donee under a parol gift do not exceed in value the rents and profits during the time she held possession, does not render them insufficient to take the gift out of the statute of frauds.

**6. Exemption—Rents of Homestead.**

The homestead exemption attaches to a claim for rents against parties wrongfully withholding possession of the homestead from the owner thereof.

APPEAL from Fannin. Tried below before Hon. E. D. McCLELLAN.

*G. A. Carpenter, Taylor & McGrady,* and *Richard B. Semple,* for appellants.

*Gross & Gross* and *Hale & Hale,* for appellees.

The Reporter has been unable to obtain copies of the briefs.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a judgment establishing a parol gift of land. The gift was claimed by Katie Dickson, wife of Charles H. Dickson, as having been made to her by her father, C. H. Walcott, about the time of or soon after her marriage, which occurred in November, 1890. C. H. Walcott died October 20, 1893, leaving a widow and several children, to whom (including Katie) he bequeathed his entire estate, and naming L. C. La Master as independent executor of his will.

At the time of the alleged gift the land had already been rented to Tom Williams for the year 1891, and consequently Dickson and wife did not take possession until January, 1892. They remained in possession,

improving and cultivating the land, till November, 1893, when they were ejected by La Master. This suit was then brought by them against him, and afterwards the widow and the other children of C. H. Walcott, deceased, were included as defendants. In November, 1895, Katie Dickson died, leaving two minor children, Mark Walcott Dickson and James Dickson, her sole descendants, who were allowed to continue the prosecution of the suit by their uncle, Ben Walcott, as next friend. Thereafter C. H. Dickson filed a disclaimer, and withdrew from the case, making also a quitclaim deed to his children.

A trial by jury, after one mistrial, was finally had in February, 1897, the verdict covering several controverted issues of fact, which are thus stated in appellants' brief:

"1. Did Walcott by sufficient designation and description give Katie Dickson the absolute fee simple title to any part and to all of the land recovered? Or did he not give her only a limited subservient right or interest, and to a part only of such land, and without in fact sufficiently designating the land?

"2. Did Katie and husband take or hold possession of the land upon the belief that it had been given her, and make improvements thereon upon the faith of such gift? Or did they not take and hold possession of the land and put the improvements thereon, so far as they did improve it, in consideration of the present and expected future use of it, and with notice that Walcott had not and would not give her the land itself?

"3. What items of improvements, their value, permanency, and when, did Katie Dickson and her husband put upon the land, and were they sufficient, when taken in connection with the value of the use of the land, and value of the land itself, to take the gift out of the statute of frauds?

"4. Was not the pasture part of the land recovered a part of Walcott's homestead at the time of the alleged gift and up to his death?"

Resolving all conflicts in the evidence, of which there are many, in favor of the verdict, we are constrained to deduce the following conclusions of fact:

1. The land in controversy, being 100 acres or more (probably about 125 or 130 acres, but possibly not more than 100) off the east end of a tract of over 600 acres in Fannin County, upon which was the homestead of C. H. Walcott, was given, about the year 1891, to Katie Dickson by her father, who owned it in his own separate right; and though the gift was a parol one, it was nevertheless absolute, and by sufficient description to substantially identify the very land sued for and described in the pleadings and judgment. There was, however, evidence tending to the contrary, and particularly evidence tending to show that no gift of the land itself had ever been made, but only the free use and enjoyment thereof.

2. Dickson and wife, with the knowledge of the donor, took and held possession of and improved the land upon the faith of its being a gift as above found, though there was evidence tending to show that they occu-

pied and improved it in consideration of current and future use and enjoyment, with notice that no absolute gift had been or would be made.

3. While so in possession, and in the belief and assurance that an absolute gift had been made, the following improvements, according to the testimony of C. H. Dickson, which was in the main corroborated by his wife, were made: "Built one house on the place; dug a pool; built hog pasture and hoghouse, cowpen and cowhouse; made an addition to the barn and stable; built a chimney; purchased a mantel board; weatherboarded the main residence on the north side, east and west ends; bought wire and run around the main part of the farm; paid for digging a cistern; grubbed the stumps out of about forty acres of the land, and cleared five acres; fenced in the front yard; set out shade trees; trimmed up a pasture back of the house and burned the brush; and dug two ditches and built a closet on the inside of the main residence; and built a privy. What I did not do myself I hired done, and paid for it. I paid Kirk and Smith $32.25 for building the house; the house cost me in work and material $100. The chimney cost me $50 in material and labor. The mantel board cost me $7.50. The cow lot and house, and hog lot and house, cost in work and labor $50. To grub the forty acres and clear the five acres, cost me $50. To build the pool cost me in work $25. Improvements and material on house cost me $25. Improvements on front yard and clearing and cleaning up back of the house cost me $15. Privy cost me $5. Paid for wire $15."

However, the testimony of several other witnesses tended strongly to rebut this evidence as to the extent, character, and value of the improvements, and to reduce the aggregate amount of $350 or $400, as testified to by Dickson and wife, about 50 per cent. The land was worth from $25 to $30 per acre, though there was evidence tending to show a value of $40 per acre or more. The value of the use and occupation was about equal to, if it did not exceed, the value of the improvements as found above, and clearly in excess of what appellants' testimony tended to show the value of the improvements to be.

We conclude that the verdict is sustained by the evidence in finding that the improvements were permanent and valuable, the value thereof being in reasonable proportion to the value of the land, to wit, about 10 per cent of such value, and enhancing the same to that extent.

4. The evidence was not such as to require a finding that the pasture portion of the land in dispute, which was quite an insignificant part thereof, was included within Walcott's homestead, though it tended to show that it might possibly have been. This issue was not, however, submitted to the jury, nor did appellants request its submission.

As these conclusions cover all the controverted issues of fact as set forth in appellants' brief, which were fully and fairly submitted in the charge, we abstain from further findings of fact, and proceed to state, briefly, our conclusions of law.

1. The ruling first complained of is that of admitting in evidence the ex parte deposition of B. J. Walcott, one of the defendants below. But

the evidence was expressly limited at the time of its admission so as not to affect the other defendants, and before the trial was concluded the defendants themselves put B. J. Walcott on the stand and proved by him that what he had stated in this deposition was true.

2. No harm could reasonably have resulted from the introduction in evidence of the quitclaim deed from C. H. Dickson to his children, made February 12, 1897, to which ruling the second error is assigned.

3. The declarations of C. H. Dickson, made on October 10, 1893, only a few days before the death of Walcott, while on his way to Limestone County, being made after his wife's rights had fully accrued, and in her absence, and no predicate having been laid for purposes of impeachment, were properly excluded; to which ruling the third error is assigned.

4. The deed from Dickson and wife to an undivided interest in the land, made to her attorneys before the suit was filed, in consideration of the services to be rendered in recovering the land, was also properly excluded. At most, it would have shown that the attorneys were tenants in common with the plaintiffs, and could not therefore have defeated recovery. The fourth assignment, which complains of the exclusion of this evidence, is therefore overruled.

5. The tenth, twelfth, thirteenth, and twenty-fifth assignments, being the next four presented in the brief, complain of the verdict; and as these complaints are covered by the conclusions of fact already announced, the assignments themselves are all overruled.

6. The charge of the court we approve as being not only correct, but also as sufficiently covering all the material issues, and hence overrule the sixth, eighth, ninth, and twenty-fourth assignments, complaining of the charge given and of the refusal to grant requested charges. Under these assignments appellants contend, upon the authority of Anna Berta Lodge v. Leverton, 42 Texas, 18, and subsequent cases in line with it, that the improvements in this case were not sufficient to take the parol gift out of the statute of frauds, because they did not exceed in value the rents and profits of the land during the time Dickson and wife held possession. But since the decision in Wells v. Davis, 77 Texas, 635, what was said in those cases upon the question here involved has not been accepted as authority. See the able opinion of Justice Pleasants in Baker v. De Freese, 21 Southwestern Reporter, 265, 2 Texas Civil Appeals, 524, for a review of the cases and a discussion of the principle.

7. The fifteenth and twenty-eighth assignments deny the right of the appellees to recover rents. The land recovered, being the homestead of the Dicksons, was clearly exempt from the claims of creditors, as was also the rents, the recovery of which was but incidental to the recovery of the land from a trespasser. See National Bank of Denison v. Kilgore, recently decided by us. Whatever right C. H. Dickson may have had to the rents passed by his disclaimer to his children. These conclusions cover the propositions submitted under these assignments.

8. The remaining assignments, complaining, with one exception, of the rulings on the demurrers, are manifestly not well taken.

The judgment is therefore affirmed.

*Affirmed.*

Writ of error granted.