JOHNSTON v. WESTERN UNION TELE-
GRAPH CO. (No. 7124.)

(Court of Civil Appeals of Texas. Dallas.
May 16, 1914. Rehearing Denied
June 6, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 68*)—DE-
LAY IN DELIVERY OF MESSAGE—MENTAL AN-
GUISH.

Where the addressee of a telegram reading, "Mother died 6:30 p. m.," had it not been delayed in delivery, would have responded thereto, requesting that the funeral be postponed until his arrival, it would have been postponed, and he would have attended it, the telegraph company was liable in damages for his mental anguish due to his failure to attend the funeral, though, had the telegram been delivered promptly, he could not have attended the funeral unless postponed, since the telegraph company ought, in the usual course of events and general experience, to have foreseen and anticipated such contingencies.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

2. TELEGRAPHS AND TELEPHONES (§ 73*)—DE-
LAY IN DELIVERY—QUESTIONS FOR JURY.

That the addressee of a telegram informing him of his mother's death, which was delayed in delivery, had received another telegram shortly before advising him that she was paralyzed and speechless, but had not gone to see her, merely made a question for the jury whether in fact he experienced mental anguish from the delay, and did not show, as a matter of law,

that he would not have attended the funeral had the telegram been delivered promptly.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by P. A. Johnston against the Western Union Telegraph Company. Judgment for defendant on demurrer, and plaintiff appeals. Reversed and remanded.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant. N. L. Lindsley, of Dallas, for appellee.

RASBURY, J. Appellant sued appellee to recover damages for mental anguish due to the negligence of appellee in failing to deliver him a telegram announcing the death of his mother. A general demurrer was sustained to the appellant's petition, and judgment on the facts alleged entered for appellee, from which this appeal is taken.

[1] The facts briefly stated, and in substance as set out in the petition, and upon which recovery was sought, are as follows: Appellant resides in the city of Dallas. Appellee received at Garner, N. C., for delivery to appellant the following telegram:

"Garner, N. C. December 25th, 1912. P. A. Johnson, Dallas, Texas. Mother died 6:30 p. m. [Signed] H. Rand."

This telegram was delivered to appellee's agent at Garner, to whom the charges for transmission were paid, and who was informed of the facts and circumstances requiring the speedy transmission and delivery thereof. Appellant's place of residence in Dallas was known to appellee, and it had, on December 21, 1912, delivered a telegram from H. Rand to appellant, relating to the same matter, at his residence in Dallas, addressed to P. A. Johnson, although appellant's correct name was Johnston. The above telegram was received by appellee at its Dallas office at 7:02 o'clock p. m., December 25, 1912, at which time appellant was at his residence in Dallas. It was not delivered until January 11, 1913. The person referred to in the telegram was appellant's mother, and the one signing it was his brother-in-law. Appellant's mother resided at Garner, N. C., and she was buried December 26, 1912, at 4 o'clock p. m., and of which he was not advised until he received a letter to that effect on the same day the telegram was delivered. If the telegram had been delivered promptly, appellant could not have reached Garner before the burial. If it had been promptly delivered, however, he could and would have departed for Garner the night of December 25, arriving there December 27, 1912, and could and would have responded to the telegram, requesting that the funeral be postponed until his arrival, and pursuant to such request it would have been postponed until his arrival, and he would have attended same. But by

reason of appellee's failure to deliver the telegram he was prevented from attending his mother's funeral, in consequence of which he suffered, and will hereafter suffer, great pain and mental anguish, to his damage $2,900. Appellee did not exercise ordinary care to deliver the telegram.

Thus the only issue is, of course, the action of the trial judge in sustaining the general demurrer, which admitted the truth of the facts we have related, but which facts, in the opinion of the court, were insufficient to show in appellant a legal right to recover the damages sought. Such right, in view of the facts related, depend upon the application of the rule announced by our Supreme Court in Western Union Telegraph Co. v. Linn, 87 Tex. 7, 26 S. W. 490, 47 Am. St. Rep. 58, reaffirmed in Western Union Telegraph Co. v. Motley, 87 Tex. 41, 27 S. W. 51, and applied in Western Union Telegraph Co. v. Norris, 25 Tex. Civ. App. 43, 60 S. W. 983, and Western Union Telegraph Co. v. Swearingen, 97 Tex. 295, 78 S. W. 492, 104 Am. St. Rep. 876, to facts not unlike those in the instant case. In the case first cited the Supreme Court, after noting that the liability of telegraph companies in failing to deliver telegrams is to be ascertained by the same rules that apply in case of breaches of other contracts, and after citing that rule, say, as applied to cases similar to the instant case, that "the wrongdoer shall be answerable for all the injurious consequences of his tortious act which, according to the usual course of events and general experience, were likely to ensue, and which therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated," and it is not necessary "that the injurious result will certainly follow from the breach of contract or tortious act, but it must be such as might be anticipated as a probable consequence" of the act. In the Linn Case, from which we have just quoted, it was said that a telegram addressed to Linn, and signed "Kate," announcing that "Grace" was seriously ill, "was sufficient to notify the telegraph company that 'Grace' was related to the plaintiff, and of the consequence to plaintiff of failure to deliver it." In like manner the telegram in the instant case addressed to appellant, stating, "Mother died 6:30 p. m.," was sufficient to notify the appellee that "mother" was related to appellant, and of the consequences which would ensue to appellant by a failure to deliver it. What we have just quoted from the Linn Case is, in our opinion, all that case decides affecting the instant case for the reason that the facts are readily distinguishable. Linn sued upon a telegram announcing the serious illness of his sister, and sought to recover on the ground that, had the message been promptly delivered, he would have telegraphed to the husband of Grace of his intention to take the next train in order to visit her in her illness, and that,

167 S.W.—18.

upon receipt of such telegram, her husband would have postponed the funeral of his sister until his arrival, who died subsequent to the message announcing her illness. In holding that Linn could not recover, the Supreme Court said the facts were too remote for the company to have reasonably foreseen and anticipated the consequences alleged to have resulted, since the company could not understand from "Grace's" serious illness that she would die and prevent Linn from attending her funeral, or that "Grace's" husband, also unknown to the company, upon receiving a message from Linn that he was coming to visit his sister, would postpone a funeral not to be inferred from the message, since such postponement depended upon the death of his sister, which was uncertain, upon Linn's answer that he would come, which depended upon his own will and his surroundings, and many other cogent reasons cited by the court. In the instant case, however, the facts are different, since the telegram sent to appellant did not announce the serious illness of his mother, but her death, followed by the further fact that he would and could have arranged to postpone the funeral and attended same if the message had been delivered. The Supreme Court did not have such a case before it in the Linn Case, although it did hold in that case that a telegram announcing the serious illness of a relative imported notice to the company that the one seriously ill might die, and that a failure to deliver the telegram might deprive the one addressed of being present at the funeral. Later, however, there was before it a case involving what is here contended for by appellant as the correct rule of law upon a state of facts similar with those in the instant case, with one difference, which will be noticed later. We refer to the Swearingen Case, supra. In that case it appeared that Swearingen's married son was killed, and a message signed by his son's wife was sent to him, reading: "Come. Frank is dead." The message was not delivered, and those in charge of the funeral, assuming that Swearingen was not coming, buried the body. If the message had been delivered, Swearingen would have replied that he was coming, and the burial would have been deferred until his arrival. Swearingen sued and recovered, and, when the case reached the Second Court of Civil Appeals, that court certified to the Supreme Court whether or not the damages recovered were too remote under the rules already cited. The Supreme Court held they were not and that the point was ruled by the decision in Western Union Telegraph Co. v. Norris, 25 Tex. Civ. App. 43, 60 S. W. 982, and that such rule was not in conflict with the holding in either the Linn or Motley Cases, supra, and was distinguishable from the holding in Western Union Telegraph Co. v. Stone, 27 S. W. 144. Thus it will be seen that recovery may be had in cases where it appears as a fact that the addressee in the message, if it

had been promptly delivered, would have had the funeral postponed in order to attend same, even though the message was received at a time that would have made it impossible for him to have been present at the actual time of such funeral, and that, under the obligations of appellee to forward the message promptly, it ought, in the usual course of events and general experience, to have foreseen and anticipated such contingencies. Then the question arises: Does the use of the word "come" in the telegrams in the Swearingen and Norris Cases in any respect vary the application of the rule in the instant case? We think not. In the Linn Case, in addition to the holding that the contents of the message were sufficient to notify the company that Linn had a serious interest in the condition of Grace, it was further held, as we have said, that:

"It also notified the defendant company that the person mentioned might die, and that plaintiff might, by a failure to deliver the message, be deprived of being present at her funeral."

That holding is approved and reaffirmed in the Swearingen Case. Thus it will be seen that the rule announced in all of said cases is not based literally upon the language of the messages, but upon the legitimate and natural deductions to be drawn from the facts stated therein, and the consequent acts or steps which men would ordinarily take in such cases, based upon the usual course of events and general experience in such matters. The telegram in the instant case bore the information that the one named therein as "mother" was related to appellant, and that his interest in her was serious. It did not say, as in Western Union Telegraph Co. v. Stone, 27 S. W. 144, that the day of burial had been set for such time as to make it impossible for appellant to attend, and as a consequence excuse the failure to deliver, but left that question open, and it seems to us, "in the usual course of events and general experience," it should have been foreseen and anticipated that appellant would desire to attend the funeral of his mother, and make arrangements for the very matter obviously left unarranged for by those sending the telegram. As much, in effect, was said in the Linn Case, since the court there held that, when the message announced the serious illness of a relative, the company should have foreseen her probable death and the inability of the plaintiff to attend the funeral on failure to deliver the message. If, then, a message announcing serious illness imports notice of probable death, and that the addressee will desire to attend the funeral, it can hardly be argued that a message announcing the death of a nearby relative does not import notice to the company that the addressee will desire to attend the funeral, and that the time and arrangement of the funeral is purposely left open in order that he may in turn communicate his wishes. That such matters should be foreseen and an-

ticipated under the rule is held in Western Union Telegraph Co. v. Caldwell, 126 Ky. 42, 102 S. W. 840, 12 L. R. A. (N. S.) 748, on the ground that they are natural and to be expected, "when measured by the ordinary rules of human experience, and judged by the standards that regulate the conduct of people generally." In like manner it is held by the Supreme Court of South Carolina in Hughes v. Western Union Telegraph Co., 72 S. C. 516, 52 S. E. 107, under facts in substance identical with those in the instant case, that the company under the general rule is bound to take notice that "in the case of a near relative the probability is that the addressee will follow the promptings of nature and respond to the message, and, if possible, at once set out to attend the sick bedside or the funeral, as the case may be." The use of the word "come" in such cases, it occurs to us, imports no more than the rule itself writes into every message announcing the death of a near relative, when it says that the company shall foresee and anticipate that men will do that which they usually and generally do in such cases, and that usually and generally they take such steps as appellant says he would have taken had the telegram been delivered. To so hold is not, we believe, to extend the rule in force in this state as argued by counsel for appellee. To say that such a message, to come within the general rule, must contain the word "come" or its equivalent is to say that persons act as they generally and usually do only when invited to do so, and would tend to narrow rather than extend the rule.

Nor do we think that the case of Western Union Telegraph Co. v. White, 149 S. W. 790, determines the issue in this case. As we understand the opinion in that case, it holds that the only theory upon which plaintiff could recover was that she could have arrived for the funeral on the day set, without reference to a postponement, for the reason, as indicated by the court, that "the evidence tends to show that, because of the mutilated condition of the body and the conditions of the weather, it would have been very difficult, if possible, to preserve the body in proper condition for burial after" the day set for burial, and the allegation that plaintiff would have had the funeral postponed was, for that reason, immaterial.

[2] The fact that appellant, as shown by appellee's defensive pleading, prior to his mother's death, had received another telegram advising him that his aged mother was paralyzed and speechless, and had not gone to see her, and from which appellee argues it could not have been contemplated by the sender of the message that appellant would arrange to attend the funeral, involves, of course, a question of fact for the consideration of the jury in determining whether appellant in fact experienced the mental anguish alleged, and which we may not con-

sider in determining the action of the trial court in sustaining the general demurrer.

We conclude the general demurrer was improperly sustained, and accordingly the judgment of the court below is reversed, and cause remanded for another trial not inconsistent with the views here expressed.

Reversed and remanded.