### HOWELL v. DUNCANSON et al.
### (No. 5847.)

(Court of Civil Appeals of Texas. San Antonio. May 3, 1917. Rehearing Denied May 30, 1917.)

1. FRAUDS, STATUTE OF &#x2696;56(1)—CONTRACTS CONCERNING LAND.

Where a colonization company was organized, but the survey of land acquired disclosed an excess over the acreage apportioned to each shareholder, and the trustee attempted orally to give the excess to the shareholders in common, the shareholders never acquired legal title to such excess; there being no memorandum reduced to writing or signed by the party to be charged, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 3965.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 84, 87, 89.]

2. GIFTS &#x2696;25—PAROL GIFT OF LAND—RELIANCE.

In such case, the shareholders, by expending $750 in four years in small temporary improvements, acquired no equitable title, where the rental value of the land was $3,600 for the four years.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 43–48.]

Error from District Court, Dimmit County; J. F. Mullally, Judge.

Suit by W. H. Duncanson and others against Lee Howell. Judgment for plaintiffs, and defendant brings error. Reversed, and judgment rendered.

T. F. Mangum, of San Antonio, for plaintiff in error. C. C. Thomas, of Cotulla, and Hicks, Hicks, Teagarden & Dickson, of San Antonio, for defendants in error.

SWEARINGEN, J. W. H. Duncanson, Ed. C. Taylor, and O. G. Harris, defendants in error, herein styled plaintiffs, filed this suit against Lee Howell, plaintiff in error, herein styled defendant, to recover title and possession of a described tract of land in Dimmit county, Tex., containing 60 acres, and commonly known as Howell Gardens. Plaintiffs sued in the capacity of owners, trustees, and cotenants for and of 600 or 800 beneficiaries. Upon instruction from the court, the jury returned a verdict in favor of plaintiffs, upon which judgment was rendered against defendant.

Plaintiffs' first amended petition alleged for cause of action that they were seised and possessed of the land, and defendant, by force, took possession thereof, etc., and in the alternative that they were seised and possessed of the 60 acres by virtue of a gift, and again in the alternative that they purchased an undivided interest in the entire tract of 12,935.92 acres, and upon division among themselves by agreement appropriated to each shareholder specific sections, and lots, and kept the remaining undivided 60-acre tract, known as Howell Gardens, as common or undivided property. The said petition also assailed the right of defendant, because, they alleged, the judgment through which defendant deraigned title had been satisfied long prior to the levy and sale of the Howell Gardens by the sheriff to defendant. Defendant denied plaintiffs' allegations, and averred, in defense, that plaintiffs had acquired no title to the land, because there was no contract in writing, nor memorandum thereof, signed by the parties to be bound, and averred title in himself. Both plaintiffs and defendant alleged Hust and Brundage as the common source.

We find from the evidence that Hust and Brundage owned 12,935.92 acres of land, surveyed and platted by them as the Bermuda Colony. They engaged in a general plan of selling the same. A part of that scheme was to receive written applications, signed by the applicant for the purchase of undivided interests in the Bermuda Colony lands, understood to be 12,800 acres. These applications provided that the purchasers of these undivided interests in the Bermuda Colony lands should be called shareholders, who should assemble in convention and select a committee of five from among their number to receive from Hust and Brundage a warranty deed to the entire tract of 12,800 acres, afterwards found to be 12,935.92 acres; the shareholders thereupon to become the owners of all the land. Thereafter the owners were, according to the application, to determine upon a division of the lands among themselves, and each shareholder or owner was to receive a deed from the above-mentioned committee of five for his acreage, residence lot in town, and undivided interest in business lot in town; the deed to describe sections and lots, and this deed to be accepted in lieu of all other interest in the Bermuda Colony lands. No provision was made for any excess or common land. All the shares for undivided interests were eventually subscribed for and paid for. The shareholders, either in person or by representatives, met. No deed was made to the shareholders, as provided in the applications. On the contrary, Hust and Brundage executed deeds to each undivided purchaser for specific property designated by the convention of shareholders. Each deed conveyed a described section of acreage property, certain residence lots in the town of Brundage, and a designated interest in a described business lot in Brund-

---

age. In this way all the lands in Bermuda Colony were sold, except King Lake of 40 acres, not involved in this suit, and the "Howell Gardens," which is the subject of this litigation. This excess of 60 acres was not contemplated when many, if not all, of the applications for purchase of shares were executed. It is a part of the excess found in the tract after a resurvey. No interest in the 60 acres was ever deeded by Hust and Brundage, who held the legal title to it, to any one, except by the sheriff to defendant, in August, 1913. There is no contract or memorandum thereof, in writing, signed by, or authorized to be signed by, Hust and Brundage, for the sale or donation of all or any part of the 60 acres. Hust and Brundage did undertake to give the 60 acres to the purchasers of the several 10-acre sections by parol, and did permit these purchasers, through a chosen committee for the purchasers, to take possession of same as a gift. Neither the trustees above mentioned, nor the purchasers, ever spent one cent in improvements upon the property. On the contrary, the trustees, in September, 1909, leased the Howell Gardens to various individuals for four years free of charge for rent. These tenants or lessees fenced and cleared the land at their own expense as tenants, and used the same for their own benefit until Howell purchased the land in August, 1913, at sheriff's sale. The sheriff's sale passed the legal title from Hust and Brundage to Lee Howell, the defendant.

[1] From the foregoing facts we conclude, as a matter of law, that plaintiffs never acquired the legal title to the Howell Gardens because neither the promise nor agreement upon which plaintiffs base their action, nor any memorandum thereof, was ever reduced to writing or signed by the party to be charged therewith, nor by any person by them thereunto lawfully authorized. V. S. R. S. § 3965.

Plaintiffs allege an equitable right to the land involved herein, by reason of the parol gift, accompanied with actual possession and the construction of valuable improvements thereon, made upon faith in the parol gift, with the knowledge and consent of the donors. There is no evidence that plaintiffs made any improvements or paid anything for improvements on the land. On the contrary, all the evidence, which, by the way, was introduced by the plaintiffs themselves and was unconflicting and undisputed, shows that tenants, for their own benefit, placed all the improvements on the land, at their own expense. The improvements consisted of fencing, clearing, and cultivating the land. There were no valuable permanent improvements put on the land. The cost to the tenants for fencing and clearing was estimated to be about $750. The value of the land was $9,000. The reasonable value of the use of the land was $900 a year, or $3,600 for four years. The tenants used it for nearly four years, and during that time spent only $750, and that for fencing, repairing fence, and clearing.

[2] We conclude that plaintiffs wholly failed to show legal title in themselves, and wholly failed to establish an equitable right to Howell Gardens. Memorandum defined: Catterlin v. Bush, 39 Or. 496, 59 Pac. 706, 65 Pac. 1064; parol gift or sale: Eason v. Eason, 61 Tex. 225; Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818; Wells v. Davis, 77 Tex. 637, 14 S. W. 237; Dixon v. McNeese, 152 S. W. 675, §§ 2 & 3; Cook v. Erwin, 133 S. W. 897; Wootters v. Hale, 83 Tex. 563, 19 S. W. 134; LaMaster v. Dickson, 17 Tex. Civ. App. 473, 43 S. W. 911; Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 435;. Baldwin v. Riley, 49 Tex. Civ. App. 557, 108 S. W. 1192; Yealock v. Yealock, 141 S. W. 842; Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1024; Wilkerson & Satterfield v. McMurry, 167 S. W. 274; Trammell v. Rosen, 163 S. W. 145,. § 2, and many authorities therein cited; Houston Oil Company v. Payne, 164 S. W. 886, § 5.

The first, second, third, sixth, seventh, and eighth assignments are sustained for the reasons above given.

The fourth is overruled.

The fifth is sustained because the evidence is conflicting. ·

The written minutes of the shareholders' convention show that Hust was elected chairman of the three trustees, with power to appoint his two associate cotrustees, all three to hold the position until their successors were elected. Hust testified that he appointed his successor, Duncanson, who appointed two associate trustees. Duncanson testified that he and his associates were elected at Brundage.

The judgment of the trial court is reversed, and judgment is here rendered, that plaintiffs take nothing by their suit, and pay all costs in this behalf expended in this and the district court.