# SECOND DISTRICT, 1901.

## WESTERN UNION TELEGRAPH COMPANY v. J. W. NORRIS.

Decided January 5, 1901.

**1.—Harmless Error—Amendment—Negligence.**

It was harmless error for the court to overrule exceptions that asserted limitations against an amendment alleging an act not before pleaded, where the case was so submitted as to permit recovery only on the negligence averred in the original petition.

**2.—Limitations—Delay in Taking Out Mandate.**

That six years elapsed after the reversal of a case by the appellate court before plaintiff took out the mandate and filed an amendment below, did not necessarily bar his right to further prosecute the case, there being no statute limiting the time within which the mandate must be taken out, and, in this case, no issue made as to abandonment of the suit.

**3.—Telegraph Company—Evidence Held Competent.**

In an action for the nondelivery of a telegram announcing that plaintiff's son was dying, it was competent for plaintiff to testify that had it been delivered he would have understood it correctly, although the son's first name was wrongly given therein, and that he would have gone to the son, and would have wired back for the body to be held awaiting his arrival, and to show by another that the body would have been so held.

**4.—Same—Unrepeated Message—Prima Facie Case of Negligence.**

In an unrepeated message the name of the addressee was changed in transmission from "Norris" to "Nortys." The contract by virtue of which it was sent provided that the defendant company should not be responsible for any errors in its transmission. No evidence was offered at the trial showing how or why the mistake of name occurred in the transmission, and defendant requested a charge, in effect, that by virtue of such contract it was not liable for the error.

Held, that the charge was properly refused, since the company, as a common carrier of messages, could not contract against exemption from liability for its own negligence, and such change of name of the addressee presented a prima facie case of negligence.

Appeal from Clay. Tried below before Hon. A. H. Carrigan.

*Stanley, Spoonts & Thompson*, for appellant.

*J. A. Templeton*, for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed in the District Court of Clay County by J. W. Norris, the appellee, on March 9, 1891, to recover from appellant damages for alleged negligence in the transmission of a message, and in the failure to deliver the same. Said message as delivered to the appellant's operator at Paris, was as follows:

"Paris, Texas, November 16, 1890.—To J. W. Norris and wife, Henrietta, Texas: Come on first train. John Norris, is dying. Jim Chancellor, Deputy Marshal."

This message was delivered to appellant at Paris between 8 and 9 o'clock a. m. of the day of its date. J. W. Norris and wife were the father and mother of Robert Norris, who was confined in the hospital department of the county jail at Paris, in the custody of the United States marshal, for some offense against the laws of the United States, and his father and mother knew that he was there so confined in the custody of the United States marshal. The receiving agent or operator at Henrietta took the message from the wire as addressed to "J. W. Nortys and wife." The message was not a repeated message, but the company neither pleaded or proved any excuse or reason for the mistake. It simply relied upon a condition printed upon the message blank, that it would not be responsible for such errors unless the message was repeated. It appears that, the operator and messenger both having tried diligently to find J. W. Nortys, and having failed, a service message was sent back to Paris at 4 o'clock of that day, notifying Chancellor that J. W. Norris could not be found in Henrietta. The addressee, Norris, resided within 300 or 400 yards of the appellant's office in Henrietta, and had for several years, and was well known, though a day laborer, and was at home all day that day, it being Sunday. This service message, it seems, was delivered to Chancellor at about 4 o'clock in the afternoon of that day, and he paid 40 cents for it, as he did also for the message he sent. This service message is not copied in the record, and we are unable to give its contents literally, but the witness Jim Chancellor speaks of it as follows: "I paid 40 cents for a return message notifying me that J. W. Norris and wife, the persons to whom I had sent the message, could not be found in Henrietta, and that the message was undelivered." Robert Norris died about 1 o'clock p. m. that day, and was buried about 5 o'clock p. m. of the same day. The body could have been held out for forty-eight hours, and the marshal would have done so if the father and

mother had sent him a message requesting it. The mistake of calling the person John, instead of Robert, was made by Chancellor. He had known him as John, and always called him John. He noticed the mistake in his name after he had written it, but says he did not have time to change it. He told the agent at Paris that he expected an answer, and to send it to him at the jail. The prisoner was about twenty years old, and realizing his dying condition, requested Mr. Chancellor to let his parents know of it. If the message had been delivered to his father he would have known it was meant for him, and that it referred to his son Robert, and would have wired the marshal to hold the body, if dead, until he arrived, and he and his wife would have gone on railroad train Monday morning at 6:30, and would have arrived in Paris on that day about from 4 to 7 o'clock p. m., and he would have brought his son's body to Henrietta for burial. He learned of the death of his son from the Dallas News on November 19th, and also received a letter from Paris that his son was dead. He then went to the telegraph office at Henrietta and inquired if any telegram had been sent him, and the agent then gave him the "Nortys" message. The mental suffering of the father and mother at being deprived of seeing the body of their son before his burial, and of performing the last rites and duties to their deceased offspring, were sufficient to warrant the verdict of $1000. The only evidence of negligence on the part of appellant's agents in the transmission of the message was the error made in the spelling of the addressee's nam—Nortys for Norris.

This case was heard before this court on appeal by the telegraph company, and was reversed on the 28th day of March, 1894, but the opinion was not reported. No mandate from this court was asked for or issued until the 24th day of February, 1900, when, upon the application of Norris, it was issued, and was filed in the District Court of Clay County on the 26th day of February, 1900, and on the 4th day of March, 1900, the plaintiff below filed an amended petition, setting up as an additional act of negligence the notice given Chancellor by the service message that the original message had not been delivered because addressees could not be found, whereby said Chancellor immediately buried the body of Robert Norris, when, if such service message had not been delivered, he would have held the body until he received an answer to his original message. Defendant excepted to this amended pleading upon the ground that it alleged a new cause of action, and was barred by the statutes of limitations of one, two, and four years, which exceptions were overruled, and this action of the court is assigned as error. In both pleadings the injury is alleged to have been produced by negligence in failing to correctly transmit and deliver the message, and this was the only issue submitted to the jury as a ground of recovery, hence the error, if any, was harmless. See Railway v. Johnson, 34 S. W. Rep., 186, and authorities there cited.

The six years intervening between the reversal of the judgment by this court and the taking out of the mandate and filing the amended

pleading did not necessarily bar the plaintiff's right to prosecute his case, as there is no statute in this State limiting the time within which the mandate in such cases must be applied for or issued, and no issue of abandonment of the suit was made.

On the trial the plaintiff was permitted to prove, over the objection of the defendant, that the evidence was immaterial and irrelevant; that if the message had been delivered to him, he would have known it was meant for him and that it related to his son Robert; that he would have wired back to Chancellor to hold the body, and would have taken the morning train, November 17, for Paris. And was permitted to prove by Chancellor, over same objections, that the body could have been kept forty-eight hours longer, and that if he had received a message from plaintiff requesting it, he would have held the body until plaintiff's arrival.

We think this evidence was all competent, material, and relevant, and related to things which very naturally would have occurred, and must be held to have been within the contemplation of the parties interested in emergencies of that kind. Jones v. Roach, 21 Tex. Civ. App., 301; Telegraph Co. v. Mitchell, 91 Texas, 454. At common law, before parties to the suit were permitted to testify, the jury could have inferred that the father would have so acted from the relationship of the parties, but now he may state affirmatively what could then only be inferred.

The court in effect instructed the jury that if they believed from the evidence that the agents of the company were negligent in the transmission of the message, or in failing to deliver it, and that the injury was caused thereby, to find for the plaintiff. The defendant company requested the following charge, which was refused: "The contract by virtue of which said message was sent provides that the defendant would not be responsible for any errors in the transmission of said message, it being an unrepeated message, and if you find that the failure to deliver said message was caused by any error made in said message during transmission of the same, by changing the name from Norris to Nortys, then you are charged that plaintiff can not recover."

Appellant insists that, as this was an unrepeated message, it is not liable for any injury or damages "caused by the negligence of its servants or otherwise," under the printed form of contract signed by the sender, which contained the above stipulation.

We think the evidence is sufficient to establish negligence on the part of appellant's agents in failing to correctly transmit the mesage as delivered to the agent at Paris. The simple fact that the name of the addressee was changed in the transmission from Norris to "Nortys" made a prima facie case of negligence against the company, and this fact put the burden on it to prove that the error was not due to negligence, the means of doing this being peculiarly within its knowledge and power. Telegraph Co. v. Edsall, 63 Texas, 675; 2 Thomp. on Neg., 837, citing Telegraph Co. v. Carew, 15 Mich., 525; Rittenhouse v. Telegraph Co., 44 N. Y., 263; Tyler v. Telegraph Co., 60 Ill., 440; Baldwin v. Telegraph

Co., 45 N. Y., 751; Bartlett v. Telegraph Co., 62 Me., 209. To these authorities we add: 3 Suth. on Dam., 2 ed., sec. 957, and authorities cited in note 1 on page 2140; Pearsall v. Telegraph Co., 124 N. Y., 256; Telegraph Co. v. DuBois, 128 Ill., 248; Telegraph Co. v. Chamblee (Ala.), 25 So. Rep., 234; Telegraph Co. v. Odom, 21 Texas Civ. App., 537.

In this case, however, no cause or excuse for the error was alleged in appellant's answer. It simply pleaded the stipulation printed on the message to the effect that it was an unrepeated message, and that it was not, therefore, liable in damages for the error. The charge asked was framed upon the theory that the contract relieved the company of liability, even though its agents were negligent in transmitting the message. This is not true. The appellant is a common carrier of messages, and while it does not insure accuracy in the transmission thereof, except by special contract, it must be held to the use of ordinary care and diligence in the performance of its contract like every other common carrier. It holds itself out to the public as a common carrier of messages for hire, and when it accepts a message and receives pay for transmitting it, it is bound in law to do it, or be able to show some valid excuse for not doing it. If atmospheric conditions, or other unavoidable causes, supervene to prevent, these may be pleaded and proved to avoid liability; but there is no more reason for this company to be exempt from liability for the negligence of its agents in performing any part of its duties or contracts than there is for excusing any other common carrier. And to permit it to contract against liability for the negligence of its agents and servants is to concede special privileges to which it is not entitled. The special charge was therefore properly refused, as the stipulation contained in the contract against liability for negligence was unreasonable and void, and the charge as asked would have compelled the jury to find for defendant, though they may have believed that the error in the transmision was the result of negligence on the part of appellant's agents. We understand this to be in accordance with the rule as established in this State. Telegraph Co. v. Mill, 57 Texas, 283; Womack v. Telegraph Co., 58 Texas, 176; Telegraph Co. v. Odom, 21 Texas Civ. App., 537; Telegraph Co. v. Neill, 57 Texas, 289.

All the assignments of error are overruled, and no other, in our opinion, raises any new question which demands discussion.

This judgment is affirmed.

*Affirmed.*

Writ of error refused.