WESTERN UNION TELEGRAPH COMPANY *v.* COMPTON.

Opinion delivered June 8, 1914.

1. TELEGRAPH COMPANIES—NEGLIGENCE—RIGHT OF ADDRESSEE TO SUE.— The addressee of a telegraph message is a party to the contract, which is made for his benefit, and he may sue for a breach thereof.

2. TELEGRAPH COMPANIES—INTERSTATE MESSAGE—NEGLIGENCE—LIMITED LIABILITY.—A telegraph company may by contract limit its liability for negligence in the delivery of an interstate telegraph message.

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Mental anguish damages are not recoverable in Oklahoma, where the default occurred. 2 Okla. 235; 115 Pac. 879; 77 Ark. 351; 92 *Id.* 219; 93 *Id.* 415; 94 *Id.* 89.

2. The provisions for a reduced rate are binding. 53 Ark. 434; 154 U. S. 1; 227 U. S. 639; 226 *Id.* 491; 35 A. L. R. 119; 191 U. S. 477.

3. Telegraphing between States is interstate commerce. Congress is súpreme; its action is exclusive. The State is superseded. 24 Stat. L. 379-384; *Ib.* 444-5, 546; 96 U. S. 1; 105 *Id.* 460; 122 *Id.* 347; 127 *Id.* 640; 132 *Id.* 473; 162 *Id.* 650; 218 *Id.* 406; 222 *Id.* 424; 218 *Id.* 406; 139 *Id.* 240; 162 *Id.* 650; 227 *Id.* 248-265; 226 *Id.* 426-435.

3. The act of Congress covers the *whole field* and renders the States impotent. 204 U. S. 426; 215 *Id.* 481; 222 *Id.* 481-436-440-442; 227 *Id.* 265; 226 *Id.* 426; 227 *Id.* 248; 222 *Id.* 370; 191 *Id.* 477; 226 *Id.* 491; 227 *Id.* 639; *Ib.* 657; 228 *Id.* 593; 204 *Id.* 426; 53 Ark. 434.

4. According to the law of this State, the valuation clause in consideration of a reduced rate as to carriers was held unreasonable (89 Ark. 154, and *W. U. Tel. Co. v. Hearn,* ms. op.), but the United States Supreme Court holds that Congress having acted, the State must give way.

5. The State's mental anguish statute is superseded. 122 U. S. 347-358; 226 *Id.* 426; 227 *Id.* 248; 226 *Id.* 426; 222 *Id.* 424-444; 227 *Id.* 653.

6. The Arkansas mental anguish statute is necessarily a burden on interstate commerce. 92 Ark. 219; 122 U. S. 650; 214 *Id.* 274; 220 *Id.* 364.

7. Our mental anguish statute denies telegraph companies the equal protection of the law. 118 U. S. 356; 165 *Id.* 150; 174 *Id.* 96; 183 *Id.* 79; 184 *Id.* 540.

8. The singling out and classification of telegraph companies as the brunt-bearers of damages for mental anguish is arbitrary and unconstitutional. 60 N. E. 674; 157 Ind. 37; 40 S. E. 618.

*U. A. Gentry* and *McMillan & McMillan,* for appellee.

1. The case of 92 Ark. 219, settles the right to sue in Arkansas for a tort. 53 Ark. 434; 161 S. W. 1027; 218 U. S. 406.

2. The Arkansas statute is not a burden on commerce, and does not deny telegraph companies the equal protection of the law. 162 U. S. 650; 172 *Id.* 557.

3. Our statute is not superseded. 162 U. S. 653, L. Ed., 40, pp. 1105-9; 122 U. S. 347-9; 218 *Id.* 406.

4. Congress has not acted on this question. 161 S. W. 1027; 191 U. S. 477; 187 *Id.* 137.

5. Until Congress passes a statute, the Arkansas act is valid. 40 U. S. (L. Ed.), 1108; *W. U. Tel. Co.* v. *James,* 162 U. S. 653.

McCULLOCH, C. J. Plaintiff was the addressee of a telegraph message sent over defendant's line from Nashville, Arkansas, to Hugo, Oklahoma, acquainting him of the critical illness of his child, and there was negligent delay at the point of destination in the delivery of the message, which prevented plaintiff from reaching the bedside of his child before its death, and plaintiff thereby suffered mental anguish.

The trial jury awarded damages in a sum which is not claimed to be excessive under the testimony.

According to the statutes of this State, mental anguish is an element of recoverable damages for negligence in transmitting or delivering telegraphic messages; but it is not an element of damages in the State of Oklahoma, where the negligent delay occurred.

We have held that under those circumstances there may be a recovery of such damages in this State. *Western Union Tel. Co.* v. *Griffin,* 92 Ark. 219.

(1) Plaintiff was the addressee and was, therefore, a party to the contract which was made for his benefit. *Western Union Tel. Co.* v. *Short,* 53 Ark. 434.

It is conceded that the evidence is sufficient to warrant the finding as to negligence of the servants of the defendant in the delivery of the message, and that plaintiff suffered mental anguish on account of the delay; but it is insisted that under the contract limiting liability of the company to the sum of $50, there can be no recovery in excess of that amount.

The message was written upon a form containing the following stipulations, which became a part of the contract, towit:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, *this is an unrepeated message, and paid for as such,* in consideration whereof it is agreed between the sender of the message and this company as follows:

"1.   The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any UNREPEATED message, beyond fifty times the sum received for sending the same, *unless specially valued;* nor in any case for delays arising from unavoidable interruption in the working of its lines; *nor for errors in cipher or obscure messages.*

"2.   In any event, the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this message is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent hereof."

(2)   This court has held that a telegraph company is a public carrier, and can not stipulate for immunity from liability on account of negligence of its servants in handling a message. *Western Union Tel. Co.* v. *Short, supra.*

The same thing was held in the recent cases of *Western Union Tel. Co.* v. *Hearn,* 110 Ark. 176, and *Western Union Tel. Co.* v. *Alford,* 110 Ark. 379.

It is contended, however, that since the statute enacted by Congress in 1910 (act of June 18, 1910, 36 Stat. L. 544, Fed. Statutes Ann. Supp. 1912, vol. 1, p. 112), amending the interstate commerce act so as to include

telegraph companies, and giving the Interstate Commerce Commission authority to regulate the rates and practices of such companies, the decisions of this State are no longer applicable, and that the enforcement of liability in disregard of the stipulation in the contract would be a forbidden interference with interstate commerce.

The statute of this State, making mental anguish, caused by negligence in handling a telegraphic message, an element of damages, is not a regulation of the transmission and delivery of such messages. It does not impose any new duties on telegraph companies, nor does it define what shall constitute actionable negligence. In fact, it does not create any new right of action at all. It merely amounts to a legislative declaration as to what are the elements of damages to be recovered. *Western Union Tel. Co.* v. *Griffin, supra.*

There is some conflict in the authorities over the question of mental anguish being an element of damages, and this court took position with what was conceived to be a majority of the courts of the country, that there could be no recovery for mental anguish independent of physical injury. *Peay* v. *Western Union Tel. Co.,* 64 Ark. 538.

Subsequently, the Legislature passed a statute declaring that telegraph companies "shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages." Act March 7, 1903, Kirby's Digest, § 7947.

There is still a conflict upon this subject in the laws of different States, and, however much uniformity is to be desired so far as concerns interstate messages, the only method by which it can be attained is through an act of Congress fixing the measure of damages. Thus far there has been no Federal legislation on that subject, and the only power given to the Interstate Commerce Commission is, as we understand, to regulate rates and classification of messages of telegraph companies.

The act of Congress is, of course, exclusive, and, in effect, deprives the States of any power to burden that class of interstate commerce with any kind of regulation; but it leaves the laws of the State in force so far as concerns elements of recoverable damages. This is necessarily so, for otherwise there could not be any damages recovered, as Congress has failed to declare the elements of damages.

It is unimportant whether those elements of damages are expressly declared by statute in the States or result from the application of common-law principles. *Pa. Rd. Co.* v. *Hughes,* 191 U. S. 477; *Western Union Tel. Co.* v. *Commercial Milling Co.,* 218 U. S. 406.

"It is to the laws, whether part of the common law or found in the statutes of the State," said the Supreme Court of the United States in the case last cited, "that we look for the validity and extent of a contract between persons. They constitute its obligation. How far this principle is limited by the commerce clause of the Constitution of the United States may be illustrated by several cases cognate to the one at bar."

The main question, therefore, in this case, is, whether or not, under the act of Congress bringing the business of telegraph companies into the field of operation controlled by the Interstate Commerce Commission, and the decisions of the Supreme Court of the United States bearing thereon, a telegraph company may, by contract, exempt itself from liability which would otherwise be imposed on account of negligence of its servants in receiving, transmitting or delivering messages.

The act of Congress does not itself confer any right to stipulate for such an exemption, nor do we find anything in the decisions of the Supreme Court of the United States which would justify the exercise of any such right.

In the recent case of *Kansas City So. Ry. Co.* v. *Carl,* 227 U. S. 639, the court said:

"Is the contract here involved one for exemption from liability for negligence and therefore forbidden? An agreement to release such a carrier for part of a loss

due to negligence is no more valid than one whereby there is complete exemption. Neither is such a contract any more valid because it rests upon a consideration than if it was without consideration. A declared value by the shipper for the purpose of determining the applicable rate, when the rates are based upon valuation, is not an exemption from any part of its statutory or common-law liability. The right of the carrier to base rates upon value has been always regarded as just and reasonable. The principle that the compensation should bear a reasonable relation to the risk and responsibility assumed is the settled rule of the common law.''

It is contended by learned counsel that the decision of the Supreme Court of the United States in *Boston & Maine Rd. Co.* v. *Hooker,* 233 U. S. 97, establishes the right to contract against liability for negligence under certain circumstances.

But a careful consideration of the opinion in that case convinces us that the court did not mean to do more than to follow the rule laid down in the *Carl* case, *supra,* and in the case of *Adams Express Co.* v. *Croninger,* 226 U. S. 491, and to apply the principles announced in those cases to a rate classification by a carrier of passengers and baggage. Nothing found in the opinion indicates an intention on the part of the court to hold that a public carrier can, upon a valid consideration or without one, stipulate for exemption from liability for negligence, or a limitation of liability, which, to that extent, amounts to the same thing. The controlling idea of those cases is that, under the Federal statutes, interstate carriers have the right to fix reasonable rates, based upon estimated value of the articles to be transported, and to establish regulations concerning the same, and that, when approved by the Interstate Commerce Commission, the States are deprived of authority to burden the carriers with any other regulations with respect thereto.

The limitation as to the amount of baggage is a part of the contract in fixing the rates, which the carrier had the right to base upon valuation of the articles to be

transported. The regulation was upheld, not as an exemption from liability, but as an agreement concerning value upon which the rate was fixed.

That principle can have no controlling force here concerning telegraphic messages, for in the very nature of things the rate can not be fixed upon valuation. A telegraphic message has no value in itself. It is not susceptible to an estimate of value in advance so as to afford a basis for fixing rates. Any attempt, therefore, to place a limitation upon the amount to be recovered as damages for negligence in handling messages constitutes nothing less than an exemption from liability, and is not enforceable.

Our conclusion, therefore, is, that, giving full force to the Federal control which has been assumed over telegraph companies as instrumentalities of interstate commerce, nothing is found which would justify the exemption from liability for negligence, as this stipulation plainly is.

It should be observed that this case has nothing to do with that feature of the stipulation which relates to repeated or unrepeated messages, for the liability is not based upon inquiry which might have been averted by repetition of the message, but the injury resulted entirely from delay in delivering the message. This case, in other words, presents purely the question whether, or not, under the Federal statutes, a telegraph company has the right to exempt itself from liability arising from negligence of its servants in delivering a message; and we are of the opinion that such stipulation is void.

The judgment is, therefore, affirmed.

### ON REHEARING.

McCULLOCH, C. J. Since this case was decided by the court, an opinion of the Supreme Court of the United States was handed down in a suit to recover damages on account of negligent failure to deliver, in the District of Columbia, a telegram sent from South Carolina; and that court, after deciding that there could be no recovery of damages on account of mental anguish because the

Federal laws in force in the District, where the act of negligence occurred, do not authorize recovery of such damages, said:

"What we have said is enough to dispose of the case. But the act also is objectionable in its aspect of an attempt to regulate commerce among the States. That is, as construed, it attempts to determine the conduct required of the telegraph company in transmitting a message from one State to another or to this District by determining the consequences of not pursuing such conduct, and in that way encounters *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, a decision no way qualified by *Western Union Tel. Co.* v. *Commercial Milling Co.,* 218 U. S. 406." *Western Union Tel. Co.* v. *Brown,* 234 U. S. 542.

It is insisted that the statement quoted above was unnecessary to a decision of the case, and was mere *dictum.* It is true that the decision was based primarily on another ground not applicable to the case now before us, but it could have been decided entirely on the ground stated above; therefore, the statement must be treated as a decision of the court upon the law of the case. The question involved being one which rests with the Supreme Court of the United States as the final arbiter, we must yield obedience to it.

The defendant claims in the pleadings only the right to enforce the limitation of its liability down to the sum of fifty dollars. A rehearing is therefore granted, and the judgment of the circuit court is reduced to the sum named in the contract.