F. W. YOUNG v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 13 January, 1915.)

1. Telegraphs—Notice of Importance of Messages—Subsequent Communications to Agent—Evidence.

In an action against a telegraph company for its failure to promptly transmit and deliver a message reading, "Am coming today; have conveyance at station," it is competent for the plaintiff to show as notice to the company of its importance that after the message had been received for transmission, but before it was in fact sent, he informed the operator at the receiving office that he was sick as the reason for sending the message; and the assurance of the defendant's agent at the time, that the message had been delivered, when it had not been, is not controlling.

2. Telegraphs—Commerce—Stipulations on Message—Limitation of Liability—Negligence—State's Decisions.

Where a telegraph company receives a telegram for transmission from another State via a point in this State to its destination here, and attempts to deliver it by telephone, the only means of wire communication between the latter points, which could reasonably have been done in time to have avoided the injury complained of, it is liable for its negligence in that respect; and the latter transaction being intrastate, the decisions of our own courts are alone applicable which declares to be invalid a printed stipulation on the message, that a recovery beyond $50 could not be had unless an extra charge had been paid for having the telegram repeated, etc. And it is further held that had the message been an interstate transaction, the result would be the same, under authority of *Tel. Co. v. Milling Co.*, 218 U. S., 406.

WALKER and BROWN, JJ., concurring in result.

APPEAL by defendant from *Webb, J.,* at April Term, 1914, of MITCHELL.

*Charles E. Greene, John C. McBee, and J. W. Pless for plaintiff.*
*George H. Fearons and Alfred S. Barnard for defendant.*

CLARK, C. J. On 13 February, 1913, the plaintiff filed in the defendant's office at Johnson City, Tenn., a message addressed to his wife, "Bakersville, N. C., *via* Toecane," reading as follows: "Am coming home today; have conveyance at station."

Exceptions 1 and 15 are that the plaintiff was allowed to testify that at 12 o'clock noon, about an hour after he had filed the message, he again went to the defendant's office in Johnson City and asked the official in charge if the message had been delivered, stating that he was very sick and anxious to have it delivered promptly. He was told in reply that it had been delivered all right. As the defendant's evidence is that the message did not reach Toecane till 2:30 p. m., this evidence was compe-

tent to show that the defendant had notice of the importance of promptness before the message in fact was sent. The plaintiff was not estopped by the incorrect reply that the message had already been delivered. It would not have taken the train two and a half hours to go from Johnson City to Toecane. The telegraph ought to be speedier.

It is 2½ miles from Toecane to Bakersville, and there is a telephone line over which the defendant should have transmitted this message to Bakersville. Indeed, according to the evidence, it could have been sent over, with proper diligence, by the mail or other means long before the plaintiff arrived at 9:30 p. m.

The defendant undertook to transmit this message over its telegraph line from Johnson City to Toecane, which was an interstate transaction. There was no damage alleged in this respect, for though the message was not received at Toecane till 2:30 p. m., this was seven hours before the plaintiff's arrival at that point on the 9:30 p. m. train. The defendant further undertook to transmit the message, on behalf of the plaintiff, over the telephone line from Toecane to Bakersville. This was purely an intrastate transaction, and as to that default there was evidence of negligence, for the natural consequences of which the defendant is liable. It is not liable because the plaintiff had measles, nor for the weather, nor for the plaintiff's ill-advised conduct under such circumstances in walking out that night from Toecane to Bakersville, when the evidence shows that he could have secured lodging in Toecane, or might have phoned out to Bakersville for a conveyance after his arrival at Toecane.

In view of the errors assigned in these respects there must be a new trial. It is proper to say, however, that we do not sustain the objection to the maintenance of the action here, because the telegram originated in another State. This has been discussed and fully settled in *Penn v. Tel. Co.,* 159 N. C., and cases cited by *Hoke, J.,* at pp. 309, 310, and cases cited in the concurring opinion at page 315.

Nor do we concur in the objection that the plaintiff cannot recover more than $50 because of the stipulation to that effect as to unrepeated messages on the back of the message. This Court has always held such stipulation invalid. *Brown v. Tel. Co.,* 111 N. C., 187, citing numerous cases and the text-books; *Sherrill v. Tel. Co.,* 116 N. C., 655; *Efird v. Tel. Co.,* 132 N. C., 271. Nor even if this were an interstate message— as the defendant contends—and the default was not solely at Toecane in this State, after the message was received there, would it affect this ruling. In *Tel. Co. v. Milling Co.,* 218 U. S., 406, it is held that where the State court held that telegraph companies cannot thus limit their liability for negligent failure to deliver a telegram addressed to a person in another State, this is not an interference with interstate commerce, and will be sustained. That case will be found with full annotations,

36 L. R. A. (N. S.), 220. The default complained of having occurred in this State, is governed by our law, though the message originated in Tennessee. *Tel. Co. v. Brown,* 234 U. S., 547.

But for the reasons given there was, in other respects,

Error.

WALKER and BROWN, JJ., concur in the result, that there should be a new trial, but are of the opinion that in no view of the evidence, as presented in the record, can plaintiff recover damages beyond the amount paid for the service or the cost of the message, because the transaction was interstate, and the contract between the parties required a continuous transmission of the message from Johnson City, Tennessee, to Bakersville, for which the plaintiff paid the entire toll when the message was delivered by him to the operator at the former place. The record clearly shows that the defendant did not agree to transmit the message to Toecane, N. C., and, for plaintiff's accommodation, or as his agent, to forward it over the telephone line to Bakersville, but to send it through to Bakersville for one charge, which was prepaid. Being, therefore, an interstate message (*W. U. T. Co. v. Pendleton,* 122 U. S., 347; *Lance v. Brown,* 234 U. S., 542), the highest Federal court, by whose decisions upon the question we are bound, has held, contrary to our ruling, that the stipulation as to repeating the message, and as to the amount of damages to be recovered, if not repeated, is a valid one. Since the passage of the act of Congress of 18 June, 1910 (1 Fed. Statutes Anno., Suppl. of 1912, p. 112), telegraph companies are to be considered as common carriers within the meaning and provisions of the Interstate Commerce Act. The power of Congress over such interstate commerce is exclusive, as it has occupied the field, and the exercise of such power cannot be affected or impaired, or in any degree changed or modified, by State regulation. *Mich. C. R. Co. v. Vreeland,* 227 U. S., 59; *Erie R. Co. v. New York,* 233 U. S., 671. In the last case the Court said: "When Congress acts in such way as to manifest its purpose to exercise its constitutional authority, the regulating power of the State ceases to exist." But coming down to the very question herein presented, it has been held, in *Primrose v. W. U. Tel. Co.,* 154 U. S., 1, that a regulation of a telegraph company requiring the sender of a message to have it repeated and to pay an additional amount therefor, in order to hold the company liable for mistakes or delays in transmitting or delivering, or for not delivering a message, is a reasonable one, and further, that the terms printed on the back of the message, so far as otherwise not inconsistent with law, form part of the contract between the sender and the company, under which the message is transmitted, citing numerous cases from the English and American courts, and stating that "the great pre-

ponderance of authority in this country sustains the reasonableness and validity of such regulation." Among other reasons for its decision is this one: "By the regulation now in question the telegraph company has not undertaken to wholly exempt itself from liability for negligence, but only to require the sender of the message to have it repeated and to pay half as much again as the usual price, in order to hold the company liable for mistakes or delay in transmitting or delivering, or for not delivering a message, whether happening by negligence of its servants or otherwise." The validity of like stipulations, limiting the measure of liability in case of loss of goods resulting from the negligence of an interstate carrier, has been sustained in numerous cases, and, among others, are the following: *Adams Express Co. v. Croninger,* 226 U. S., 491; *Ch. B. and D. R. Co. v. Miller, ibid.,* 517; *Ch. St. Paul, M. and O. R. Co. v. Latta, ibid.,* 519; *Mo. K. and T. R. Co. v. Harriman,* 227 U. S., 657; *S. A. L. R. Co. v. Pace Mule Co.,* 34 Supr. Ct. Rep. (U. S.), p. 775; *W. U. Tel. Co. v. Bilisoly,* 82 S. E. (Va.), 91; *W. U. Tel. Co. v. Compton,* 169 S. W., 946. See, also, *W. U. Tel. Co. v. Dant,* recently decided in the Court of Appeals of the District of Columbia.

Under the cases last cited, if plaintiff can recover more than the cost of the message, his recovery could not exceed the stipulated maximum amount of $50 as liquidated damages.

The case of *W. U. Tel. Co. v. Brown,* 234 U. S., 542, cited in the opinion of the Court, is not in point, the case involving the right of one State to control the law of another State, as to a transaction taking place partly in both, the Court specifically holding that the statute of South Carolina, as to the recovery for mental anguish in telegraph cases, could not operate in the District of Columbia; but it did give strong intimation that the statute was an unwarranted interference with interstate commerce.

Since the passage by Congress of the act of 1910, above mentioned, telegraph companies are subject to the provisions of the Interstate Commerce Act, and whatever the law may have been before that time, the case is now governed by the principles as stated in *Adams Express Co. v. Croninger* and other like cases *supra.*