AMERICAN EXPRESS COMPANY, APPELLEE, V. POSTAL
TELEGRAPH-CABLE COMPANY, APPELLANT.

FILED FEBRUARY 12, 1915.   No. 18,012.

1. **Telegraphs and Telephones: NEGLIGENCE: LIABILITY.** A telegraph company is liable for all damages sustained by reason of its failure to correctly transmit and deliver a message received by it, notwithstanding an agreement printed on its blanks to the contrary. Rev. St. 1913, sec. 7406.

2. ———: **TORTS: DAMAGES.** The sender of a message, who has been damaged by the failure of a telegraph company to deliver it as written, may waive the contract and sue as in tort, and in such case he is entitled to compensation for all damages which are directly caused by or flow from the negligent omission, regardless of whether they might have been contemplated as a probable result of a breach of the duty. *Chicago, B. & Q. R. Co. v. Spirk*, 51 Neb. 167.

3. ———: **NEGLIGENCE: LIABILITY.** A telegraph company, which accepts a message to be delivered, beyond its own lines and delivers the same incorrectly, is liable for the mistake, although made by an employee of another corporation over whose lines the sending company transmitted the message.

4. ———: ———: **DEFENSES.** As against one who employs an express company to transmit money by wire, the fact that by a rule of the express company its agents are required to send messages directing the payment of money in code words, does not constitute the express company a joint tort-feasor with a telegraph company which failed to correctly deliver the message (which designated the amount of money to be paid in plain words) and constitutes no defense in an action for damages, for such failure, by the express company against the telegraph company.

5. ———: ———: **DAMAGES: DIRECTION OF VERDICT.** Where the amount of damages sustained by reason of the failure to deliver a message correctly is proved by undisputed evidence and is liquidated, it is not error for the district court to apply principles of law to the undisputed facts and direct a verdict for plaintiff.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*F. H. Gaines, B. H. Dunham* and *Herman Aye, contra.*

LETTON, J.

In 1905, Watson, Woods Brothers & Kelly Company, who were engaged in importing and selling horses for breeding purposes at Lincoln, Nebraska, employed the American Express Company to transmit by telegraph to Joseph Watson, Queen's Hotel, Antwerp, Belgium, 80,000 francs. In order to accomplish this, the agent of the express company delivered to the agent of the defendant at Lincoln the following message, addressed to the American Express Company at 65 Broadway, New York: "Button Pike. Eighty thousand francs. Joseph Watson, Queen's Hotel, Antwerp, Belgium." The words "Button Pike" were code words used to identify the sender of the message as the agent of the express company, and also constituted an order to transmit the sum named. The telegram reached Chicago, and was there received in proper form by an automatic receiving and recording instrument known as a "Morsograph." In transmitting the message from Chicago, the letter "y" in the word "eighty" was omitted, and, as received by the express company in New York, it was a direction to pay eight thousand francs. The express company promptly cabled its agent at Antwerp to pay 8,000 francs to Mr. Watson. This message was delivered to him about 9 o'clock in the evening of November 2. Watson had been purchasing horses in Belgium and France, which were to be delivered to him at Antwerp on November 3, to be loaded upon the steamer "British Princess," which was scheduled to leave Antwerp on November 4. As soon as Watson received the message he notified the express company's agent that there was an error, and immediately cabled to his company at Lincoln to the same effect. A correction was made, and the remainder of the 80,000 francs was ordered paid to him. The message was received on November 5, after the steamer had sailed. As soon as Watson found that he could not get the money in time to pay for the 35 horses he had purchased, he, through his interpreters, notified the persons from whom he bought to

delay delivery. Previous to this, Watson, Woods Brothers & Kelly Company had incurred large expenses in advertising a public auction of these 35 horses and 19 other horses to be made at Lincoln, Nebraska, on December 5, and had incurred large expenses in preparing for the sale. Neither Watson nor his associates in this country were able to procure other transportation so that the horses might be delivered before the day of sale, although they used due diligence in that behalf. The horses were finally shipped by a later steamer. Watson, Woods Brothers & Kelly Company, afterwards began an action against the American Express Company to recover damages for the failure to transmit the money to Watson. Issues were made up, and as the case was about to come to trial the express company was informed by its counsel that, from his knowledge of the facts constituting the plaintiff's case, if the case went to a jury, a verdict for a large sum would probably be rendered against them, and that a proposition to compromise for the sum of $3,000 had been made. He advised its acceptance. This was done, and a judgment for $3,025 was rendered against the express company in the United States circuit court for Nebraska. The Postal Telegraph-Cable Company was fully notified by the express company of the nature of that action, warned to defend, and was advised of the offer to compromise, but at all times denied any liability. This action is brought to recover the amount of the judgment paid by the express company, together with the costs and expenses of defending that suit.

The defense is: (1) That the message was sent as an unrepeated message; under a condition in the contract which provided that the telegraph company should not be liable for mistakes in any such messages beyond the amount received for transmission; (2) that the error was made by an operator in the employment of the Postal Telegraph-Cable Company of Illinois, a different corporation from this defendant, and that there was a condition on the telegraph form which provided that the company should not be liable for mistakes made beyond its own lines; (3) that a rule of the express company required its agents to send

messages of this nature in code words; (4) that the message did not indicate, and the company was ignorant of, its purpose, and such liability and loss as is claimed here was not within the contemplation of the parties; (5) that it accepted the message with the belief that the express company had, in accordance with one of its rules, procured an agreement from the sender of the money that it should not be liable for errors made by telegraph companies in sending messages of this nature.

At the conclusion of the testimony the district court directed the jury to return a verdict for plaintiff for the amount claimed. Defendant appeals.

The brief of appellant presents three points which are relied upon as requiring a reversal of the judgment. It is claimed that there was no legal proof of damages of which the mistake was the proximate cause; that, if it be so held, the amount was a question for the jury; and that the damages claimed are so remote and speculative that they could not be forseen or anticipated. It is argued that it is not shown that Watson had any legal contract with the sellers to deliver the horses in Antwerp on November 3. In the absence of evidence to the contrary, Mr. Watson's testimony sufficed to show that he had bought the horses, and that they would have been delivered in Antwerp if he had not stopped delivery as soon as he ascertained that the money would not be received in time to pay for them on that date. The testimony as to other damages incurred was undisputed and would have sustained a much larger judgment. It is immaterial that the telegraph company was not aware of the purpose of the message other than that it directed the payment of money. By section 7406, Rev. St. 1913, a telegraph company is declared to be liable for the nondelivery of, and for all mistakes in transmitting, messages made by any person in its employ, and "any such telegraph company shall not be exempted from any such liability by reason of any clause, condition or agreement contained in its printed blanks." This statute is considered and applied in *Kemp v. Western Union Telegraph Co.*, 28 Neb. 661, *Western Union Telegraph Co. v. Low-*

*rey,* 32 Neb. 732, *Pacific Telegraph Co. v. Underwood,*
37 Neb. 315, *Western Union Telegraph Co. v. Kemp,* 44
Neb. 194, and *Western Union Telegraph Co. v. Beals,* 56
Neb. 415, and it is held that a telegraph company, by virtue
of the statute, is liable for all damages sustained by its
failure to correctly transmit and deliver a message received
by it, notwithstanding anything contained on its printed
blanks. In a like action, under a somewhat similar statute
in Wisconsin, in *Fisher v. Western Union Telegraph Co.,*
119 Wis. 146, it was held that the familiar doctrine of
*Hadley v. Baxendale,* 9 Exch. (Eng.) 341, which ordina-
rily controls the measure of damages in actions for breach
of contract, does not apply. See, also, *Barker v. Western
Union Telegraph Co.,* 134 Wis. 147. *Smith v. Western
Union Telegraph Co.,* 80 Neb. 395, and *Marriott v. Western
Union Telegraph Co.,* 84 Neb. 443, were apparently ac-
tions for breach of contract, and the rule in *Hadley v.
Baxendale, supra,* seems to have been applied. Here, how-
ever, the petition bases the right to recover, not upon the
contract, but upon negligence and want of care on the part
of the telegraph company, and the rule as to the measure
of damages in actions for breach of contract does not apply.
The case falls within the rule applied to other common car-
riers, with respect to the right of a plaintiff who waives
the contract and sues in tort and the plaintiff is entitled
to compensation for all injuries which are directly caused
by or flow from the wrongful act or acts, regardless of
whether they might have been contemplated as a probable
result of a breach of the duty. *Chicago, B. & Q. R. Co. v.
Spirk,* 51 Neb. 167.

It is asserted that the telegraph company is not liable
for the mistake of an employee of the Postal Telegraph-
Cable Company of Illinois, which company had assumed
the obligation to deliver the telegram at New York city.
At the time of the trial, defendant stipulated that the tele-
gram in question "was delivered by the defendant to the
plaintiff at its office in New York city on November 1,
1905." Since the company accepted and actually delivered

97Neb.45

it, all subordinate agencies and persons employed in the transmission were directly or indirectly in its service and acting in its behalf. It assumed the burden of delivery, and delivered the message in a mutilated form. Moreover, under the statute referred to, the condition printed upon the back of the message whereby it attempted to limit its liability to its own line is inoperative.

It is next argued that the negligence of the express company concurred with that of the Postal Telegraph-Cable Company of Illinois, and there can be no contribution between joint tort-feasors. It is said that the express company is a tort-feasor because it was negligent in failing to use code words in sending the message. There was no duty to send code words, and no neglect in failing to do so. The express company could waive its own regulation, and it is shown that it often did so. The telegraph company received the message with the amount of money to be paid stated in plain words. It is too late after damages result to say that it should not have been written or accepted unless in code. Besides, among the printed conditions upon which the telegraph company bases its defense is one that it shall not be liable "for errors in ciphers or obscure messages." This of itself justifies the use of plain words, if any justification is needed. That the words of a telegram are too plain and easily understood is a novel complaint. It is usually codes and ciphers that do not find favor with telegraph companies.

The damages sustained by the importing company were abundantly proved and seem to have exceeded the sum agreed upon. The amount of the judgment, attorneys fees, and expenses incurred by the express company in defending the suit were not disputed. The amounts being liquidated, the district court had the right to apply the principles of law and to direct the jury accordingly. Its judgment is therefore

AFFIRMED.

MORRISSEY, C. J., ROSE and SEDGWICK, JJ., not sitting.