WESTERN UNION TELEGRAPH CO. v. BAILEY. (No. 1539.)*

(Court of Civil Appeals of Texas. Texarkana. Jan. 27, 1916. On Rehearing, Feb. 24, 1916.)

1. EVIDENCE ☞80(1)—PRESUMPTIONS—LAWS OF SISTER STATE.

Where the laws of a sister state are involved, they will, in the absence of evidence, be presumed to be the same as the laws of the forum.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ☞80(1).]

2. TELEGRAPHS AND TELEPHONES ☞27—DELAY IN TRANSMISSION OF MESSAGE—DAMAGES—MENTAL ANGUISH.

While the mental anguish doctrine prevails in Texas, such damages cannot be recovered in action for delay or nondelivery of a telegram originating in a state where such damages are not allowed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 80; Dec. Dig. ☞27.]

3. COMMERCE ☞59—INTERSTATE COMMERCE—BURDEN UPON.

In an action against a telegraph company for nondelivery of a death message originating in a sister state where damages for mental anguish could be recovered, the action of the court of the forum in allowing recovery for such damage, the negligence having occurred in the state of the forum, is not improper as placing the burden on interstate commerce contrary to Const. U. S. art. 1, § 8, subd. 3, giving Congress exclusive power over such commerce; for, while the contract of the telegraph company was one for interstate carriage, yet, Congress not having acted, actions for breach are governed by the state laws.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 87, 100; Dec. Dig. ☞59.]

4. COMMERCE ☞10—INTERSTATE COMMERCE—POWER OF CONGRESS.

Until Congress has acted and passed laws regulating the recovery for breach of a contract for the delivery of an interstate telegram, the state courts are warranted in following their own laws.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8; Dec. Dig. ☞10.]

5. TELEGRAPHS AND TELEPHONES ☞54(6)—NONDELIVERY OF MESSAGES—STIPULATIONS.

A provision on the back of a telegraph blank, which embodied the contract, limiting the company's liability for failure to discharge its duty to a sum not exceeding $50, is void.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 44, 46; Dec. Dig. ☞54(6).]

6. APPEAL AND ERROR ☞562—STATEMENT OF FACTS—NECESSITY.

In an action for nondelivery of a telegram, the company cannot on appeal question its liability on the ground of a stipulation limiting liability for an unrepeated message, where such provision did not appear in the statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2495–2499; Dec. Dig. ☞562.]

On Rehearing.

7. APPEAL AND ERROR ☞1079—ASSIGNMENTS OF ERROR—SUFFICIENCY.

The excessiveness of an award of damages for nondelivery of a telegram cannot be considered on appeal, where the appellant's brief did not present that assignment in proper manner.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4262; Dec. Dig. ☞1079.]

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Action by T. C. Bailey against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Chas. S. Todd, of Texarkana, for appellant. Mahaffey & Keeney, of Texarkana, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for damages resulting from the negligent failure to deliver a telegraphic message sent by R. L. Bailey from Bethel Springs, Tenn., to T. C. Bailey at New Boston, Tex., notifying the latter of the dangerous illness of his brother. The message reached New Boston promptly, but was never delivered, and the appellee did not learn of his brother's illness and death till some time after the burial.

This is the second time this case has been before this court. See Bailey v. Western Union Tel. Co., 171 S. W. 840. On the first trial, the court in his charge to the jury limited the amount which might in any way or event be awarded to the plaintiff to the sum of $50. The plaintiff appealed from a judgment for that amount, and assigned as error the giving of the charge referred to. This court sustained the assignment and reversed and remanded the case, holding that the stipulation contained in the printed matter on the back of the telegram, which provided that $50 should be the limit of liability, was void. The last trial proceeded according to the instructions given in that opinion, and a judgment was rendered in favor of the appellee for the sum of $1,000, from which the telegraph company prosecutes this appeal. Inferentially, it appears to be conceded that,

if the correctness of the judgment appealed from in this case is to be tested by the laws and judicial policy of this state, there is no error insisted upon which will justify a reversal. In other words, if no federal question is involved, the judgment should be affirmed. In their brief, counsel for the appellant thus state the questions which are raised:

"First. This being an interstate message and constituting interstate commerce, is mental anguish a proper element of damages to be submitted to and determined by the jury?

"Second. Is the valuation clause of the contract, limiting recovery of damages to the sum of $50, reasonable and valid, and is the unrepeated message clause, also limiting liability, reasonable and valid?

"Third. Is the free delivery limit clause, limiting liability on messages wherein the addressee was beyond the delivery limits of office, reasonable and valid?"

In view of the fact that since the former appeal some other courts of high repute have announced a ruling in conflict with what we there held, we have felt constrained to give the subject further careful consideration. We shall therefore endeavor to treat the questions raised as if this were their first presentation to this court.

The argument attacking our former ruling rests upon two propositions: First, that the judgment appealed from, being based upon damages resulting from mental anguish alone, imposes a burden on interstate commerce and violates the provisions of subdivision 3, § 8, of article 1 of the Constitution of the United States. Second, that telegraph companies engaged in interstate commerce have by an act of Congress been made subject to the provisions of the Interstate Commerce Law, which alone must be looked to in determining their liability for damages and the validity of their contracts designed to limit or qualify that liability. These propositions present two separate and distinct federal questions, depending upon two distinct federal provisions for their support. If the judgment in this instance violates the provisions of the commerce clause of the Constitution, it should be set aside, regardless of whether or not Congress has undertaken to regulate this class of commerce. On the other hand, if Congress has undertaken to regulate telegraph companies doing an interstate business, and has prescribed a rule for determining their liability for negligently failing to deliver messages intrusted to them for transmission from one state to another, that law is supreme and should control, without reference to the constitutional objection. But if it should appear that neither of these grounds for federal intervention is well taken, then the judgment of the court below should be affirmed.

We shall now take these questions up for discussion in the order stated above.

[1-3] First, does the judgment appealed from violate the commerce provision of the federal Constitution? As authority for answering that question affirmatively, counsel for the appellant have referred to the case of W. U. Tel. Co. v. Brown, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457. This case was considered, and an effort made to distinguish it from the case now under consideration on the former appeal. The message in that instance was sent from a point in South Carolina, addressed to Brown at Washington, D. C. It was forwarded to the latter place without delay, but through the negligence of the agents of the telegraph company in Washington was not delivered. It was a death message; and Mrs. Brown, claiming damages subsequently filed a suit in the court of common pleas in the state of South Carolina, where she recovered a judgment for damages, based upon mental anguish. That judgment, after being affirmed by the Supreme Court of South Carolina (92 S. C. 534, 75 S. E. 542), went before the Supreme Court of the United States and was there reversed for the reasons stated and quoted in our former opinion. It appears from the facts set out in the opinion that the suit was based upon a statute of South Carolina which provided that damages for mental anguish were recoverable in such cases. It also appears that under the rulings of the courts of the District of Columbia, over which the Supreme Court of the United States exercised appellate jurisdiction, mental anguish was not regarded as a proper element of damages in such suits. Justice Holmes, who rendered the opinion, held that the action was one of tort; that, the misconduct having occurred in the District of Columbia, the question of liability must be determined by the laws of that place. We deem it unnecessary to again quote at any length from that case, and shall merely refer to the extracts made in the opinion in this case on the former appeal. The decision in the Brown Case announces these three propositions: First, that the measure of damages for an act of negligence, when treated as a tort, is to be determined by the laws of the place where the tort is committed; second, that in the District of Columbia, where the common law, as construed by the Supreme Court of the United States, prevails, the mental anguish doctrine, as commonly understood in telegraph cases, will not be enforced; third, that the laws of a state prescribing a measure of damages for a tort cannot be given any extraterritorial effect.

The dissimilarity between the facts of that case and the one here under consideration may be thus pointed out: There the action was one sounding in tort; here the suit is for the breach of a contract. There the misconduct occurred in another jurisdiction; here it occurred in the state of the forum. There the trial court undertook to measure the damages to be recovered by its own laws, which were different from those of the district where the tort was committed; here the judgment may be sustained whether tested

by the laws of this state or by those of the state from which the message came—and this is true whether the negligence charged be treated as a tort or as the breach of a contract. There is no evidence in the record as to what were the laws of Tennessee, and we must therefore assume that they are the same as those of this state. We understand that in reviewing the decisions of a state court the federal Supreme Court will follow the same rule. Liverpool & Gr. West. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788. It is evident, from previous decisions of the federal Supreme Court, that its holding in the Brown Case that the judgment of the South Carolina court was an unconstitutional interference with interstate commerce, did not rest upon the solitary fact that the measure of damages had been so extended as to permit a recovery for mental anguish, but upon the application of the South Carolina statute to an incident of interstate commerce occurring beyond the limits of that state. It was not the particular consequences of negligence which this statute prescribed that made it offensive, but the fact that it prescribed any rule of damages to be applied to conduct beyond the state borders. If we transpose the material facts and assume that the message had been sent from Washington to a point in South Carolina, and that the negligent delay had occurred in the latter state, or if we assume that negligence was in the transmission, occurring in the state of South Carolina, in either situation the language used by Justice Holmes would have no appropriate application. Under the assumed facts, the rule observed for estimating the damages in the South Carolina court would have been in accordance with that which was expressly approved. The language used by that court in C., M. & St. P. Ry. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688, is peculiarly applicable to the transposed and assumed state of facts. The court said:

"A carrier exercising his calling within a particular state, although engaged in the business of interstate commerce, is answerable, according to the law of the state, for acts of nonfeasance or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another state, the right of action for the consequent damage is given by the local law. It is equally within the power of the state to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the state has the power to redress and to punish. The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits."

This is almost a literal repetition of what was said in Smith v. Ala., 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508. In these cases, carriers of freight doing an interstate business were involved. But if a state may prescribe what shall be the consequences of their misconduct occurring within its limits, there is no reason why the same authority may not be exercised toward telegraph companies similarly engaged. The modification of the facts in the illustration made above does not eliminate the South Carolina statute or dispense with any of its provisions. It merely restricts the application of the statute to torts committed in that state. The case of Tel. Co. v. James, 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105, is also in point. In that case David W. James sued the telegraph company in the state court of Georgia to recover the sum of $100 as a penalty for the failure of the company to promptly deliver a telegraphic message addressed to him at his residence in Blakely, in the state of Georgia. The message was sent from Eufaula, in the state of Alabama. The only question before the court was whether the statute of the state of Georgia providing for the recovery of such a penalty was a valid exercise of the power of the state in relation to messages by telegraph sent from points outside to some point within the state of Georgia. The validity of that statute was upheld upon the ground that it was but a proper exercise of the police power of the state, in the absence of any opposing congressional legislation on that subject. If the statute of Georgia which prescribed a penalty for negligence in handling an interstate message in that state is not an unconstitutional interference with interstate commerce, why should the South Carolina statute be offensive so long as it is applied in the same manner? Surely it will not be contended that there is less authority for saying what shall be the measure of damages than for penalizing the company for a legal wrong. As in line with the cases discussed, we may refer to the following: Tel. Co. v. Commercial Milling Co., 218 U. S. 406, 31 Sup. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815; I. C. Ry. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 Sup. Ct. 760, 59 L. Ed. 1306; Penn. Ry. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268. We therefore conclude that the Brown Case is not authority for holding that a judgment for mental anguish is alone an unconstitutional interference with interstate commerce.

But it is argued that the courts of Texas treat negligence in handling telegraphic messages as the breach of a contract, and measure the damages that may be recovered by the laws of the state in which the message

originated. This is the settled rule in this state; and, while the mental anguish doctrine has long prevailed, our courts have refused to enforce it in any event when the message comes from a state whose laws do not permit such damages. W. U. Tel. Co. v. Buchanan, 35 Tex. Civ. App. 437, 80 S. W. 561; Tel. Co. v. Young, 133 S. W. 512, and cases there cited. We then have this question: Does the application of the lex loci contractus rule offend against the commerce provision of the federal Constitution? It has never been so held, unless that should be the logical inference from the language used in the Brown Case. Prior to the amendment of the interstate commerce law, providing a rule for determining the liability of interstate carriers in negligence cases, the federal Supreme Court had frequent occasion to review the decisions of the state courts in cases which involved the validity of stipulations designed to relieve the carrier from all or a portion of its common law liability. Different states had enacted varying laws on the subject. In some states those stipulations were valid, while in others they were invalid. But the Supreme Court, in every instance which has come under our observation, refused to interfere with the right of the state court to give effect to its own rules of construction and its own laws in testing the validity of such contracts. Penn. Ry. Co. v. Hughes, supra, was a suit to recover for a loss resulting from the negligence of a carrier in transporting a shipment of horses from Albany, N. Y., to a point in the state of Pennsylvania. The bill of lading contained stipulations which limited the liability of the carrier to an agreed value. Under the laws of the state of New York, where the contract was made, this provision was valid. But under those of Pennsylvania it was invalid. The courts of the latter state applied their own laws and refused to entertain a defense founded upon that part of the contract. The federal Supreme Court in reviewing the case, after referring to a contrary rule, approved by it in the case of Hart v. Penn. Ry. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, said:

"The federal courts, in cases of which they have jurisdiction, will doubtless continue to follow the rule of the Hart Case; but the highest court of Pennsylvania may administer the common law according to its understanding and interpretation of it, being only amenable to review in the federal Supreme Court where some right, title, immunity, or privilege, the creation of the federal power, has been asserted and denied."

In Tel. Co. v. James, supra, it was said:

"It is the duty of a telegraph company which receives a message for transmission, directed to an individual at one of its stations, to deliver that message to the person to whom it is addressed, with reasonable diligence and in good faith. That is a part of its contract, implied by taking the message and receiving payment therefor."

Negligence may be both a tort and the breach of a contract. What particular rules of law shall be applied in any given instance will depend largely upon the form of the action and the facts pleaded. In fixing the measure of the damages which the aggrieved party may recover as the consequences of the breach of a contract, the court merely endeavors to hold the aggressor to such liability as he assumed when he entered into the contract. So long as Congress has not prescribed a different standard for measuring the damages recoverable in such instances, or has not enacted a law which practically excludes the states from that field of commercial legislation, the state courts may exercise the same liberty in dealing with interstate telegraphic messages as they once did in respect to interstate shipments of freight. Hence we feel justified in holding that the judgment in this case is not an unconstitutional interference with interstate commerce.

[4] We then pass to the second proposition relied on; that is, that Congress has superseded the authority of the states in this class of cases so that the liability in this instance must be determined by the rule adopted in federal courts. As supporting that proposition, we are again referred to the Brown Case and to the following: Tel. Co. v. Compton, 114 Ark. 193, 169 S. W. 946; Tel. Co. v. Johnson (Ark.) 171 S. W. 859; Tel. Co. v. Simpson (Ark.) 174 S. W. 232; Tel. Co. v. Holder (Ark.) 174 S. W. 552; Tel. Co. v. Bilisoly, 116 Va. 562, 82 S. E. 91; and quite a number of others. The four Arkansas cases expressly refer to the Brown Case as authority for their ruling. In the Virginia case the facts may be differentiated from those before us, and it is not in point, although the language used by the court tends to support the appellant's contention. Under the view which we feel constrained to take of the Brown Case, it is not only no authority for sustaining the rule which appears to have controlled the decisions cited, but will even support a contrary ruling. No mention is made in the opinion there rendered of any action on the part of Congress which could in any event conflict with the statute of South Carolina. Two grounds are stated for reversing the judgment. The first mentioned is the failure of the trial court to estimate the damages by the laws of the District of Columbia, the place where the tort was committed. Manifestly, this had no reference whatever to any general law of Congress, but to the common-law rules of decision prevailing in the District of Columbia. The second ground is the unconstitutionality of the South Carolina statute as applied in that instance. The errors discussed would be fatal whether Congress had acted or not. But had there been in existence at that time a conflicting federal statute, it is inconceivable that the Supreme Court would have overlooked or failed to refer to so important an authority for reversing the judgment. This omission is too significant to be ignored, and can be accounted

for only upon the assumption that in the opinion of that court no such law existed. If the Brown Case furnishes no authority for the adverse decisions lately rendered, there is none. It is unnecessary to add more to what has been said on the former appeal in disposing of this issue.

There being no question which enables the federal Supreme Court to apply its own rules for determining the measure of damages, we feel it our duty to adhere to the established judicial policy of this state. In Young v. Tel. Co., 168 N. C. 36, 84 S. E. 45, and Hornthal v. Tel. Co., 166 N. C. 602, 82 S. E. 851, the Supreme Court of North Carolina took a view in harmony with what has been said. In Am. Ex. Co. v. Po. Ca. Co., 97 Neb. 701, 151 N. W. 240, the Supreme Court of Nebraska considered a state of facts in all material respects similar to those before us, and sustained a judgment without making any reference to a federal question.

[5] Under the rule followed in both Texas and Tennessee, those stipulations in the contract before us which undertake to limit the liability of the telegraph company for failure to discharge its duty to a sum not exceeding $50 are void. Womack v. Tel. Co., 58 Tex. 176, 44 Am. Rep. 614; Tel. Co. v. Odum, 21 Tex. Civ. App. 537, 52 S. W. 632; Tel. Co. v. Norris, 25 Tex. Civ. App. 43, 60 S. W. 982; P. Tel. Co. v. Sunset Const. Co., 102 Tex. 148, 114 S. W. 98; Tel. Co. v. Hearne, 77 Tex. 84, 13 S. W. 971; Tel. Co. v. Linn, 87 Tex. 7, 26 S. W. 490, 47 Am. St. Rep. 58; Railway Co. v. Smith, 123 Tenn. 678, 134 S. W. 866; Leedy v. Tel. Co., 130 Tenn. 547, 172 S. W. 278; Pepper v. Tel. Co., 87 Tenn. 554, 11 S. W. 783, 4 L. R. A. 660, 10 Am. St. Rep. 699. See, also, Blackwell Milling & Elev. Co. v. Western Union Tel. Co., 17 Okl. 376, 89 Pac. 235, 10 Ann. Cas. 857. To these may be added the cases cited on the former appeal.

[6] The appellant also relies upon a stipulation which seeks to limit liability for an unrepeated message. No such provision is to be found in the statement of facts, and the assignment cannot be considered.

The final assignment of error, which raises the question of liability for failure to deliver a message beyond the free delivery limits, cannot be sustained. Aside from any other reason, both the pleadings and the facts show that no free delivery in this instance was contemplated, but, on the contrary, the agent of the appellant demanded and received full compensation for making a rural delivery of the message.

The judgment is affirmed.

### On Rehearing.

In its motion for rehearing, appellant's counsel has called attention to the fact that the case of W. U. Tel. Co. v. Brown, cited above, arose before the act of Congress placing telegraph companies under the provisions of the Interstate Commerce Law was enacted. A reference to the original report of that case confirms that statement. However, we do not feel that this necessitates a different ruling upon the question as to whether or not that act of Congress was applicable to this case. What was said upon the former appeal we think sufficiently disposes of that particular question.

[7] Appellant also insists that we erred in failing to sustain its objection to the judgment because it was excessive. It is a sufficient answer to that contention to say that the appellant's brief does not present that particular assignment in a manner which entitled it to consideration.

The motion is overruled.